Judge LIVINGSTON files a separate opinion concurring in part and dissenting in part.
GERARD E. LYNCH, Circuit Judge:
Appellant Famous Horse, Inc., operates a chain of clothing stores in the New York area called V.I.M. that sell name-brand jeans and sneakers for relatively low prices. Appellees offered to supply several clothing stores, including V.I.M., with Rocawear brand jeans at a discounted price. After purchasing jeans from Appellees in 2006, V.I.M. discovered that the jeans were counterfeit and stopped selling them. Appellees, however, allegedly continued selling the counterfeit jeans to other clothing stores, and in the course of *108 pursuing such sales told other potential customers that V.I.M. was a satisfied customer.
Famous Horse filed a complaint against Appellees in September 2007, and a subsequent amended complaint in February 2008, asserting claims under § 32 and § 43(a) of the Lanham Act, as well as related state law claims. In May 2008, the district court dismissed Famous Horse’s Lanham Act claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), and declined to exercise jurisdiction over the remaining state law claims. Famous Horse twice sought leave to amend its complaint to remedy the district court’s concerns, which the district court denied. The district court also dismissed the complaint against two defendants — N.J. French Kiss, Inc. and Florentin Fashions, Inc. — for failure to serve those defendants with the February 2008 amended complaint. This appeal followed.
I. Standard of Review
We review the district court’s grant of a Rule 12(b)(6) motion to dismiss de novo, accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiffs favor. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir.2008). We review the district court’s denial of leave to amend a complaint for abuse of discretion. See, e.g., Jin v. Metro. Life Ins. Co., 310 F.3d 84, 101 (2d Cir.2002).
II. Lanham Act Trademark Infringement Claims
The district court ruled that in order to plead a trademark infringement claim under § 32 of the Lanham Act, “a plaintiff must allege facts establishing, inter alia, that a defendant’s use of plaintiffs registered mark is likely to cause confusion as to the source of a product,” and that to plead a false endorsement claim under § 43(a), “a plaintiff must demonstrate that there exists a likelihood of confusion between its product and the alleged infringer’s product.” Famous Horse Inc. v. 5th Ave. Photo Inc., No. 07 Civ. 7818(WHP), 2008 WL 2156727, at *1 (S.D.N.Y. May 19, 2008) (internal quotation marks omitted). The court then concluded that because “Famous Horse fails to allege any facts establishing consumer confusion as to the source of its products,” its Lanham Act claims failed. Id. After Famous Horse twice sought to amend its complaint, the district court found that the proposed amended complaints “recite[d] the same arguments” and “d[id] not cure the defects identified by the Court.” The district court erred both in dismissing the amended complaint, and in denying Famous Horse leave to amend its complaint further.
It is true that a Lanham Act claim must be predicated on a likelihood of customer confusion. The consumer confusion triggering the Lanham Act, however, need not be solely as to the origin of the product. Confusion as to the origin of goods or services is indeed the basis for one type of Lanham Act claim. See 15 U.S.C. § 1125(a)(1)(A); see also, e.g., Standard & Poor’s Corp., Inc. v. Commodity Exch., Inc., 683 F.2d 704, 708-09 (2d Cir.1982) (holding that Commodity Exchange’s proposed “Comex 500 Stock Index” violated the Lanham Act by tending to cause consumers to confuse the Comex 500 Stock Index and the Standard & Poor 500 Index). Neither § 32 nor § 43(a), however, speaks solely to confusion about the origin of goods or services. Famous Horse asserted claims arising under both § 32 and § 43(a).

A. Section IS (a) False Endorsement Claim

Section 43(a) specifically prohibits false or misleading representation producing *109 many different types of consumer confusion. It prohibits the use in commerce of:
any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which-—•
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person %uith another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.
15 U.S.C. § 1125(a)(1) (emphasis added).
Section 43(a) thus specifically defines misrepresentation causing confusion as to affiliation, association, or sponsorship as infringing activity. A consumer “need not believe that the owner of the mark actually produced the item and placed it on the market” in order to satisfy § 43(a)’s confusion requirement. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 204 (2d Cir.1979). “The public’s belief that the mark’s owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.” Id. at 205 (emphasis added).
We have applied this principle specifically to claims that one company had falsely portrayed another as a satisfied customer. The defendant in Courtenay Commc’ns Corp. v. Hall, 334 F.3d 210 (2d Cir.2003), had placed on its website plaintiffs trademark and a quotation, purportedly by the plaintiff company’s President, praising the services provided by the defendant. Id. at 212. We held that the plaintiff had sufficiently alleged false endorsement to overcome a motion to dismiss. See id. at 214 n. 1; see also Allen v. Nat’l Video, Inc., 610 F.Supp. 612, 617, 625-31 (S.D.N.Y.1985) (finding Lanham Act violation based on portrayal in advertisement of a lookalike of plaintiff Woody Allen as “satisfied holder” of defendant’s product).
Famous Horse brought a similar “satisfied customer” false endorsement claim here. Famous Horse alleged in its complaint that “Defendants stated and implied to its customers and prospective customers, and [to] V.LM.’s customers and potential customers, that V.I.M. was a satisfied customer of its Rocawear jeans.” In its amended complaint, Famous Horse repeated that the defendants “used the V.I.M. trademark to advertise that V.I.M. was a satisfied customer of its services and Rocawear jeans.” The amended complaint also explained that the defendants “falsely stated to customers, potential customers, suppliers and potential suppliers of both Defendants and Plaintiff, that Plaintiff is a satisfied customer of Defendants, and that they are associated with the marks.” Famous Horse therefore alleged in its complaint that Appellees used a “word, term, name, symbol,” or a “false or misleading representation of fact, which is likely ... to deceive as to the ... sponsorship, or approval of [its] goods ... by another person.” 15 U.S.C. § 1125(a)(1)(A).

B. Section 32 Trademark Infringement

Section 32, in contrast, does not prohibit causing confusion specifically as to association or sponsorship of commercial activities. Rather, the language of § 32 is more general: it prohibits “us[ing] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive” without defining the types of confusion that might be caused. 15 U.S.C. § 1114(l)(a). Nev *110 ertheless, Famous Horse expressly alleges that Appellees used its marks in connection with the false representation that it was a satisfied customer, a use that is plainly likely to deceive and create confusion and mistake regarding the relationship between Appellees’ goods and services and Famous Horse. The complaint therefore adequately alleges a sufficient likelihood of confusion resulting from Appellees’ actions under § 32.

C. Use in Commerce

Both § 32 and § 43(a) prohibit the “use in commerce” of a registered mark or false description of fact, respectively. The phrase “use in commerce” is defined in 15 U.S.C. § 1127, and distinguishes between uses in commerce that relate to goods and those that relate to services. See Rescuecom Corp. v. Google Inc., 562 F.3d 123, 139 (2d Cir.2009). A mark is used in commerce on goods when “it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale,” and on services “when it is used or displayed in the sale or advertising of services and the services are rendered in commerce.” 15 U.S.C. § 1127. Famous Horse does not claim that Appellees attached the V.I.M. mark to the goods they were selling. Famous Horse thus did not state a claim for trademark infringement under § 32 with respect to Appellees’ sale of goods.
In the amended complaint, however, Famous Horse claims that Appellees “used the V.I.M. trademark to advertise that V.I.M. was a satisfied customer of its services and Rocawear jeans.” (emphasis added.) By using the V.I.M. trademark in stating that V.I.M. was a satisfied customer of Appellees, Appellees attached the V.I.M. mark to claims about the services provided by Appellees.[1] Famous Horse therefore stated a valid claim under § 32 that Appellees used in commerce a “reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising” of Appellees’ services in a way that was “likely to cause confusion, or to cause mistake, or to deceive.” 15 U.S.C. § 1114(l)(a).
In contrast, § 43(a) “goes beyond § 32 in making certain types of unfair competition federal statutory torts, whether or not they involve infringement of a registered trademark.” Ives Labs., Inc. v. Darby Drug Co., 601 F.2d 631, 641 (2d Cir.1979); see also Empresa Cubana del Tabaco v. Culbro Corp., 399 F.3d 462, 478 (2d Cir. 2005). Section 43(a) prohibits the use of a “word, term, name, symbol, ... false or misleading description of fact, or false or misleading representation of fact, which is likely ... to deceive as to the ... sponsorship, or approval of [its] goods ... by another person.” 15 U.S.C. § 1125(a)(1)(A). We need not apply the § 1127 requirements regarding the use of marks to the false endorsement claim, therefore, and Famous Horse stated a valid claim under § 43(a).

D. Conclusion

We thus vacate the district court’s dismissal of Famous Horse’s false endorsement claims under § 32 alleging that Appellees used V.I.M.’s mark to claim that Famous Horse was a satisfied customer of Appellees’ services, and under § 43(a) al *111 leging that Appellees used V.I.M.’s mark to claim that Famous Horse was a satisfied customer of Appellees’ goods and services.
III. Lanham Act Unfair Competition Claims
Famous Horse also alleges that Appellees competed unfairly in violation of § 43(a) of the Lanham Act by selling counterfeit Rocawear jeans.[2] Appellees argue that Famous Horse cannot make an unfair competition claim based upon Appellees’ misuse of the Rocawear trademark, which Famous Horse does not own. Famous Horse argues that it is injured in two ways by Appellees’ misuse of the Rocawear mark: First, it loses sales of genuine Rocawear jeans to Appellees when customers purchase what they believe are also genuine Rocawear jeans from Appellees or from retailers who purchased from them. Second, customers will believe that Famous Horse is selling Rocawear jeans at an inflated price, devaluing V.I.M.’s alleged reputation as a discount purveyor of genuine brand-name jeans. We agree with Famous Horse that under the particular circumstances of this case, it has stated an unfair competition claim though it does not own the abused Rocawear mark.
The Lanham Act’s language is extremely broad, stating that any person who uses “any false designation of origin, false or misleading description of fact, or false or misleading representation of fact” which is likely to cause confusion as to the origin or sponsorship of his or her goods or services “shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by stick act.” 15 U.S.C. § 1125(a) (emphasis added). Read literally, this language would confer standing upon virtually any plaintiff who claims any sort of injury from a misleading use of a trademark without regard to ownership.
Courts, however, have universally interpreted the phrase “any person who believes that he or she is or is likely to be damaged by such act” more narrowly. Courts have read the Act’s purpose as “exclusively to protect the interests of a purely commercial class against unscrupulous commercial conduct,” and eliminated claims brought by consumers alleging unfair competition. Colligan v. Activities Club of New York, Ltd., 442 F.2d 686, 691— 94 (2d Cir.1971) (emphasis added). With respect to commercial plaintiffs, in contrast, circuits have split on how to apply prudential standing limitations. None of the various tests employed, however, hold that only the owner of a trademark has standing. The strongest application is the categorical approach utilized by the Seventh, Ninth, and Tenth Circuits. Those courts require the commercial plaintiff bringing an unfair competition claim to be in competition with the alleged false advertiser. See, e.g., Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 873 (10th Cir.1995); L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc., 9 F.3d 561, 575 (7th Cir.1993); *112 Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1108-09 (9th Cir.1992). The Third, Fifth, and Eleventh Circuits, in contrast, analyze the standing of commercial plaintiffs by applying a more flexible standard. Phoenix of Broward, Inc. v. McDonald’s Corp., 489 F.3d 1156, 1162-64 (11th Cir.2007) (citing the standards for prudential standing established in Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 538-.44, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)); see also Procter & Gamble Co. v. Amway Corp., 242 F.3d 539, 562-63 (5th Cir.2001); Conte Bros. Auto., Inc. v. Quaker State-Slick 50, Inc., 165 F.3d 221, 234 (3d Cir. 1998).
On at least one occasion, we have applied the strong categorical test that in order “to have standing for a Lanham Act false advertising claim, the plaintiff must be a competitor of the defendant and allege a competitive injury.” Telecom Int’l Am., Inc. v. AT & T Corp., 280 F.3d 175, 197 (2d Cir.2001) (alterations omitted), quoting Stanfield, 52 F.3d at 873, citing Heath, 9 F.3d at 575 & Waits, 978 F.2d at 1109. Referencing Telecom, at least one other circuit has understood us to have adopted the categorical approach. See Am. Ass’n of Orthodontists v. Yellow Book USA, Inc., 434 F.3d 1100, 1103-04 (8th Cir 2006).
Furthermore, although Telecom is the only case in which we appear to have squarely utilized the categorical approach, we have frequently stressed the importance of competition between litigants in evaluating Lanham Act claims even if we have not explicitly required competition. For example, in Colligan, we cited as “succinctly stat[ing] the import of § 43(a)” a decision from the district court for the District of Columbia. Colligan, 442 F.2d at 692 n. 27, citing Gold Seal Co. v. Weeks, 129 F.Supp. 928 (D.D.C.1955), superseded on other grounds by statute, 15 U.S.C. § 1071(b)(1) (2000). That decision explained that § 43(a)
means that wrongful diversion of trade resulting from false description of one’s products invades that interest which an honest competitor has in fair business dealings.... In effect it says: you may not conduct your business in a way that unnecessarily or unfairly interferes with and injures that of another; you may not destroy the basis of genuine competition by destroying the buyer’s opportunity to judge fairly between rival commodities by introducing such factors as falsely descriptive trade-marks which are capable of misinforming as to the true qualities of the competitive products.
Gold Seal, 129 F.Supp. at 940. Similarly, Colligan also cited a concurrence by Judge Jerome Frank as “a learned discussion of the historical-legal relationship between protection of commercial interests and consumer interests under the rubric of unfair competition, which relationship comprises the background against which Congress enacted § 43(a).” Colligan, 442 F.2d at 692 n. 26. In that concurrence, explaining the Lanham Act’s focus on commercial interests rather than consumer interests, Judge Frank clarified:
The harm, if any, is to the plaintiff, and is said to be this: The defendant’s product may be so “inferior” as to create ill-will among consumers directed against the supposed common maker of both products, with the consequence that the good will of the plaintiff, as maker of the first product, will be impaired.
Standard Brands v. Smidler, 151 F.2d 34, 42-43 (2d Cir.1945) (Frank, J., concurring).
While stressing the importance of whether the plaintiff and defendant are in competition, our cases, with the exception of Telecom, have not treated this factor as *113 a sine qua non of standing. Rather, we have said that competition is a factor that strongly favors standing, not that competition is an absolute requirement for standing. Our test for standing has been called the “reasonable interest” approach. Under this rubric, in order to establish standing under the Lanham Act, a plaintiff must demonstrate (1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising. See Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d Cir.1994). We have not required that litigants be in competition, but instead have viewed competition as a strong indication of why the plaintiff has a reasonable basis for believing that its interest will be damaged by the alleged false advertising.
In Ortho Pharmaceutical, for example, we noted that although the proof required to show injury and causation varies by circumstances, “we have tended to require a more substantial showing where the plaintiffs products are not obviously in competition with defendant’s products, or the defendant’s advertisements do not draw direct comparisons between the two.” Id. (emphasis added). In another case, assessing the likelihood of damages alleged by one shampoo company against another, we noted that the two shampoos “compete in the same market, and it is quite likely that the apparently effective suggestions of competitive superiority, if repeatedly communicated to consumers, would eventually result in loss of sales to [the appellant].” Vidal Sassoon, Inc. v. Bristol-Myers Co., 661 F.2d 272, 278 (2d Cir.1981). In a case in which Johnson & Johnson alleged that the sale of a hair depilatory product with baby oil had engaged in false advertising by suggesting to consumers that the depilatory could replace Johnson & Johnson’s baby oil, we held that the correct standard for proof of damages under the Lanham Act is “whether it is likely that [the defendant’s] advertising has caused or will cause a loss of Johnson sales.” Johnson & Johnson v. Carter-Wallace, Inc., 631 F.2d 186, 190 (2d Cir. 1980).
In any event, here Famous Horse and Appellees are in essence competitors. We therefore need not address whether Telecom indicates a shift in our approach to unfair competition claims: Famous Horse has standing whether we apply the reasonable interest test or the stronger categorical requirement. Famous Horse, which sells genuine Rocawear jeans, is clearly in competition with Appellees, who sell counterfeit Rocawear jeans. The injuries alleged by Famous Horse — lost sales to the lower-priced counterfeit jeans — constitute the competitive injury required for Lanham Act standing under Telecom. See 280 F.3d at 197. Although Famous Horse sells at retail, and Appellees primarily sell at wholesale, the goods they sell are in direct competition in the marketplace, and Appellees’ products are supplied to retailers in direct competition with Famous Horse. Cf. Info. Res., Inc. v. Dun & Bradstreet, 294 F.3d 447, 450 (2d Cir.2002) (noting in antitrust context that dealers have standing to allege anticompetitive activity by retailer even though they do not compete at same market level); TransSport, Inc. v. Starter Sportsivear, Inc., 964 F.2d 186, 189 (2d Cir.1992) (holding that sports jacket dealer’s requirement that buyers not resell jackets at wholesale “impedes the ability of authorized retailers ... to enter the wholesale market and thereby reduces the aggregate number of dealers — retail and wholesale — competing to sell Starter jackets” and that “[restrictions on intrabrand competition invariably reduce competition”). In this setting, it is clear that Famous Horse alleges that Ap *114 pellees’ conduct directly undermines its competitive standing in the marketplace.
We thus turn to application of the reasonable interest approach and ask whether Famous Horse sufficiently alleged “a reasonable interest to be protected against the advertiser’s false or misleading claims.” Ortho Pharm., 32 F.3d at 694 (internal quotation marks omitted). Famous Horse asserts a specific interest because it has a particular market niche that is especially likely to be harmed by counterfeit sales. The V.I.M. chain of stores, according to Famous Horse, is known for selling genuine name-brand clothing at very low prices. Famous Horse thus alleges that it was uniquely affected by Appellees’ sale of counterfeit Rocawear jeans .in two ways: first, its reputation as a discount store was harmed because consumers believed that it sold Rocawear jeans at inflated prices compared to counterfeit jeans supplied by Appellees; and second, consumers who learn of counterfeit Rocawear jeans on the market will believe that V.I.M. similarly peddles counterfeit clothes.
We faced a similar Lanham Act claim in PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120 (2d Cir.1984). In that case, a group of corporations that held royalty interests in selected recordings of the guitarist Jimi Hendrix sued Audiofidelity, which they alleged was falsely advertising recordings as featuring Hendrix when Hendrix actually appeared only as a background performer. Id. at 121-22. We held:
In the present case plaintiffs claim to have straight-forward commercial interests that could reasonably be affected by misleadingly packaged Jimi Hendrix recordings. Plaintiffs are in the business of making money by acquiring royalty interests in the sale of record albums and singles. Their interests in promoting sales are direct, and hardly less immediate than the interests of those who actually distribute the records. Every time a record in which they have a royalty interest is sold, they earn money; every time a sale is lost to a competitor, they lose a potential profit. Moreover, if consumers buy defendants’ Jimi Hendrix albums and find that they have, in fact, been misled, then it is not unlikely that they will be reluctant to buy other Hendrix recordings, including those in which plaintiffs have their interests. Because of their royalty interests, plaintiffs have a pecuniary stake in sales of Hendrix recordings that makes them genuine business competitors of the defendants.
We stress that there is nothing novel about awarding standing under the Lanham Act to one who has a direct pecuniary interest at stake.
Id. at 125.
Here, Famous Horse alleged both lost sales and a unique harm to the specific reputation of V.I.M. stores. This allegation of unique harm makes them similar to the PPX plaintiffs. Like those plaintiffs, who claimed that defendants undermined them business by making misleading statements about the genuineness of their Hendrix recordings, Famous Horse alleges that it has a particular interest in selling genuine Rocawear jeans at a discount price point, and in customers’ perception that its jeans, though discounted, are indeed genuine. The facts that the defendants’ alleged misstatements concern Hendrix, in the one case, and Rocawear, in the other, rather than the plaintiffs, and that any misleading statements about the origins of the products sold do not attempt to associate those products with the plaintiffs, do not undermine the plaintiffs’ claims that defendants’ presentation of counterfeit goods undermines the plaintiffs’ ability to *115 market genuine products. We thus hold that Famous Horse has alleged a reasonable interest to be protected against Appellees’ alleged false advertising as well as a reasonable basis for believing that this interest will be damaged by the alleged false advertising, and has properly stated a false advertising claim under the Lanham Act.[3]
We note that this claim may well be difficult to prove at trial. While it may be plausible that Famous Horse can in principle be harmed by counterfeiters of Rocawear products, proof of actual losses will be difficult given that plaintiffs V.I.M. stores operate in a large market that includes luxury retailers selling name brands at full price, discounters of various stripes, and numerous counterfeiters selling fake versions of name brands. The alleged harm to Famous Horse depends upon the idea that its sales are specifically affected by Appellees’ behavior. Famous Horse has alleged sufficiently plausible claims, however, to overcome a motion to dismiss under Rule 12(b)(6).
IV. Additional Issues
Famous Horse’s First Amended Complaint, filed in February 2008, added Florentin Fashions, Inc. and NJ French Kiss, Inc. as defendants (the “New Jersey defendants”). The district court dismissed the claims against the New Jersey defendants sua sponte for failure of service. That dismissal was error. “[Njotice to the plaintiff must be given prior to a sua sponte dismissal” for failure to serve process. Thompson v. Maldonado, 309 F.3d 107, 110 (2d Cir.2002). Had the district court given such notice, Famous Horse would have had the opportunity to present proof of service on the New Jersey defendants, which it purports to have provided in the record on review. We thus vacate the district court’s dismissal of the New Jersey defendants to permit the district court to evaluate this evidence.
Finally, the district court dismissed Famous Horse’s various state law claims without prejudice, declining to exercise pendent jurisdiction over those claims after the dismissal of the federal causes of action. Because we reverse the district court’s dismissal of Famous Horse’s Lanham Act claims, we reinstate Famous Horse’s remaining state law claims as well. See Societe Des Hotels Meridien v. LaSalle Hotel Operating P’ship, L.P., 380 F.3d 126, 133 n. 2 (“Since we reinstate the Lanham Act claims, we vacate the dismissal of Meridien’s state law claims.”).
V. Conclusion
For the foregoing reasons, the judgment of the district court is VACATED, and the *116 case remanded for further proceedings consistent with this opinion.

. We note, however, that although the present allegations are sufficient to survive a motion to dismiss, in order to prove the claim, Famous Horse must present evidence of what services the Appellees provided and subsequently advertised using the V.I.M. mark.

. Famous Horse's original complaint set forth only the false endorsement Lanham Act claim. Although the First Amended Complaint adds a claim for "unfair competition,” its allegations do not set forth Famous Horse's "lost sales” theory, it does not expressly cite the Lanham Act, and it likely does not adequately state any viable claims for relief. Famous Horse twice proposed a Second Amended Complaint, however, clarifying its unfair competition claim as arising under the Lanham Act. The district court denied Famous Horse's motions to amend its complaint a second time based on its mistaken belief that the unfair competition claim in the proposed Second Amended Complaint simply restated the false endorsement claim that the district court erroneously dismissed. Its subsequent denials of Famous Horse’s motions to amend the complaint, therefore, were also incorrect. On appeal, the parties agree that the proposed complaint presents an additional, distinct theory, though they disagree about the merits of that theory.

. The dissent undertakes to decide whether Famous Horse has a reasonable interest to be protected from Appellees’ allegedly unlawful conduct by applying a five-part test adapted from the Third Circuit's decision in Conte Brothers. We believe this approach unnecessarily complicates the inquiry, without clarifying the result; we would reach the same result under the Conte Brothers standard, which essentially demands the same balancing as our more flexible approach. By selling counterfeit goods at a below-market price to Famous Horse's direct competitors, Appellees are alleged to have threatened Famous Horse's bottom line and damaged its reputation as a discount purveyor of name-brand jeans. As the dissent concedes, these are the very harms "the Lanham Act is designed to remedy.” Dissenting Op. at 119. The mere fact that one party is a retailer and the other a wholesaler changes little. Cf. Citicorp v. Interbank Card Ass’n, 478 F.Supp. 756, 763-64 (S.D.N.Y.1979) (finding standing in licensor to challenge anti-competitive practices of credit card issuer). As a result, we find no reason to bar Famous Horse — the only party to have demonstrated the necessary interest, initiative, and resources to do so — from bringing suit to remedy these harms.