**TURBON INTERNATIONAL, INC., Plaintiff,**

v.

**HEWLETT–PACKARD CO. et al., Defendants.**

**No. 10 Civ. 4540 (VM).**

United States District Court, S.D. New York.

March 8, 2011.

Eric Matthew Fishman, Jamie Mark Brickell, Pryor Cashman LLP, New York, NY, for Plaintiff.

Carrie A. Jablonski, Christopher D. Landgraff, Vincent S.J. Buccola, Bartlit Beck Herman Palenchar & Scott LLP, Chicago, IL, Joseph C. Smith, Jr., Bartlit Beck Herman Palenchar & Scott LLP, Denver, CO, for Defendants.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Plaintiff Turbon International, Inc. ("Turbon") brought this action against defendants Hewlett–Packard Co. ("HP") and Hewlett–Packard (Thailand) Ltd. ("HP–Thailand") (together, "Defendants") alleging, among other things: (1) misappropriation of trade secrets by HP; (2) unfair competition by HP; and (3) false advertising by HP. Defendants now move to dismiss the claims described above under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12(b)(6)"). For the reasons listed below, the Court GRANTS in part Defendants' motion.[1]

## I. BACKGROUND [2]

Turbon is a Pennsylvania corporation with its principal place of business in New Jersey. It acquires empty laser printer cartridges made by printer manufacturers including HP, refills the empty cartridges and sells them at prices below the cost of brand-name cartridges like those manufactured by HP. Refilled cartridges are known in the laser printer industry as "after-market" or "remanufactured" products.

HP, a Delaware company with its principal place of business in California, invited Turbon to attend a meeting at HP's corporate headquarters on January 15, 2009 ("January 15 Meeting"). At the meeting, Turbon learned that HP planned to begin offering remanufactured cartridges to customers of its managed print service business. HP had identified Turbon as one of three manufacturers of after-market cartridges that could potentially supply the lower cost cartridges to HP. Turbon agreed to pursue the potential business relationship, and the parties entered into a Confidential Disclosure Agreement ("First CDA") executed by HP on January 15, 2009.

After the January 15 Meeting, Turbon disclosed to HP information about its raw materials, product specifications, packag-

---

[1]. Defendants also move to dismiss Turbon's claim for alleged tortious interference with prospective economic advantage against HP and HP–Thailand. The Court ordered limited discovery to determine whether HP–Thailand is subject to personal jurisdiction in New York and reserves ruling on the tortious interference claim until jurisdictional discovery is complete. Defendants do not challenge at this stage Turbon's claims for fraudulent inducement against HP and injunctive relief against both Defendants.

[2]. The facts below are taken from the Amended Complaint ("Complaint" or "Compl."), documents attached to the Complaint as exhibits and documents incorporated into the Complaint by reference. The Court accepts these facts as true for the purposes of ruling on a motion to dismiss. *See Spool v. World Child Int'l Adoption Agency,* 520 F.3d 178, 180 (2d Cir.2008). Except where specifically referenced, no further citation to these sources will be made.

ing, pricing and quality control systems. HP employees visited Turbon manufacturing facilities in Romania and Thailand.

HP expressed enthusiasm for Turbon's products, but it required additional information. Consequently, the parties entered into a second Confidential Disclosure Agreement ("Second CDA") (together with the First CDA, "CDAs"), which protected Turbon's: "1. Financial information, 2. Product pricing, 3. Methods of Manufacturing and Facilities at which product [sic] are manufactured, 4. Manufacturing costs, 5. Product specifications, 6. Customers and Partners business strategies and plans." (Landgraff Decl., Ex. B.) After HP executed the Second CDA, Turbon provided HP with access to its Empties Collection Facility in Pennsylvania, where Turbon collects and processes empty printer cartridges. HP visited Turbon's corporate headquarters in New Jersey and Germany, as well as its European Empties Collection Facility, and HP made a second trip to the Romanian factory.

On September 17, 2009, HP awarded Turbon the right to supply remanufactured cartridges for two of its models, and on October 20, 2009, HP awarded Turbon the right to supply remanufactured cartridges for a third model. Turbon filled HP's first orders for the remanufactured cartridges in November and December of 2009. In January of 2010, however, HP informed Turbon that it had decided not to offer remanufactured cartridges to its customers and terminated its relationship with Turbon.

HP subsequently expanded its "Planet Partners" program, which provides customers of HP's laser printer cartridges with "free and convenient" methods of returning empty cartridges to HP for recycling. (Compl. ¶ 13.)

In March of 2010, HP launched an advertising campaign to discourage customers from purchasing after-market cartridges. One print advertisement ("Advertisement"), which ran in periodicals including the *Philadelphia Inquirer* and *The New York Times*, depicts a seller opening his coat to reveal printer cartridges. The Advertisement reads: "BEWARE: 1 IN 3 BARGAIN TONERS LEAK OR FAIL." (Compl., Ex. A.) HP's website ("Website") touted the superiority of its cartridges over after-market products:

Lower-priced laser printer toner delivers just what you'd expect. Lower quality.

QualityLogic *asked real business printing customers* about the level of print quality they require for different business purposes. Often, remanufactured cartridge print quality degrades, resulting in pages that *are not good enough for distribution* to customers and others outside the company—or even for circulation within the company.

(Landgraff Decl., Ex. D; Brickell Decl., Ex. C.)

Meanwhile, Turbon continued to compete with HP for business. In late 2009, Turbon submitted a bid to supply remanufactured cartridges to Ramathibodi Hospital ("Hospital") in Thailand. The Hospital verbally informed Turbon that it planned to switch to Turbon products because the remanufactured cartridges cost less than the HP cartridges the Hospital typically used. HP's Thai subsidiary, HP–Thailand, sent two letters to the Hospital to persuade the Hospital not to change its supplier. The first letter read in part:

If it is a refilled or reused cartridge, it *will not work* and thus causing [toner] to remain in the cartridge and thus disabling printing work or resulting in pale color print. . . .

Reusable printing cartridges *should not be used* as they may cause problems

on printing quality since the said area is limited....

[Remanufactured print cartridges] *will be hazardous to your health.*

(Compl. ¶¶ 59–60.) The second letter continued in the same vein:

Re: Disadvantage of using refilled/re-manufacturer printer [toner]

[HP–Thailand] would like to express our thanks to you for supporting our genuine printing [toner] products of Hewlett–Packard all along. Presently there are distributors of refilled/remanu-factured printing [toner] products for uses with Hewlett–Packard printers. We would like to explain to you that using non-genuine printing [toner] *will affect the quality of your printing,* shortening the usage life of printers and causing faster deterioration of certain parts.

(Compl. ¶ 61.) The Hospital decided not to purchase remanufactured cartridges from Turbon.

## II. *MOTION TO DISMISS STANDARD*

In assessing a motion to dismiss under Rule 12(b)(6), dismissal of a complaint is appropriate if the plaintiff has failed to offer factual allegations sufficient to render the asserted claim plausible on its face. *See Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). To state a facially-plausible claim, a plaintiff must plead the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, a court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. The task of a court in ruling on a motion to dismiss is to "assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *In re Initial Publ. Offering Sec. Litig.,* 383 F.Supp.2d 566, 574 (S.D.N.Y.2005).

For the purposes of deciding a motion to dismiss, the Court accepts the factual allegations in a complaint as true, and draws all reasonable inferences in the plaintiff's favor. *See Iqbal,* 129 S.Ct. at 1950 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir.2002) (all reasonable inferences shall be drawn in plaintiff's favor). However, allegations that are no more than legal conclusions "are not entitled to the assumption of truth." *Iqbal,* 129 S.Ct. at 1950.

## III. *DISCUSSION*

### A. *TORT CLAIMS*

#### 1. *Choice of Law*

The parties agree that New Jersey law governs Turbon's claims for misappropriation of trade secrets and unfair competition. Their agreement "concludes the choice of law inquiry" as to those claims. *See Underpinning & Found. Skanska, Inc. v. Travelers Cas. & Sur. Co., of Am.,* 726 F.Supp.2d 339, 343 n. 2 (S.D.N.Y.2010) (*quoting Am. Fuel Corp. v. Utah Energy Dev. Co.,* 122 F.3d 130, 134 (2d Cir.1997)); *Motorola Credit Corp. v. Uzan,* 388 F.3d 39, 61 (2d Cir.2004).

#### 2. *Substantive Claims*

As an initial matter, HP contends that Turbon's claims for misappropriation of trade secrets and unfair competition are not actionable in tort because they arise out of contracts between the parties, *i.e.,* the CDAs. Under New Jersey law, "mere failure to fulfill obligations en-

compassed by the parties' contract[s] ... is not actionable in tort." *Perkins v. Wash. Mut., FSB,* 655 F.Supp.2d 463, 471 (D.N.J.2009). However, a tort claim may lie in a contractual relationship if "'the breaching party owes an independent duty imposed by law.'" *Id. (quoting Saltiel v. GSI Consultants, Inc.,* 170 N.J. 297, 788 A.2d 268, 280 (2002)). "The critical issue is whether the allegedly tortious conduct is extraneous to the contract." *Emerson Radio Corp. v. Orion Sales, Inc.,* No. 95 Civ. 6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000). The Court need not decide whether the conduct alleged here is extraneous to the CDAs because the Court finds that the Complaint fails to state a claim for misappropriation of trade secrets or unfair competition under New Jersey law.

a. *Misappropriation of Trade Secrets*

■ To state a claim for misappropriation of trade secrets, Turbon must allege facts that, if proven, could establish that: "(1) a trade secret exists; (2) that plaintiff took reasonable precautions to maintain the secrecy of the information; and (3) the defendant used the secret information to the detriment of the plaintiff." *See Oswell v. Morgan Stanley Dean Witter & Co.,* No. 06 Civ. 5814, 2007 WL 1756027, at *6 (D.N.J. June 18, 2007) (*citing Rycoline Prods., Inc. v. Walsh,* 334 N.J.Super. 62, 756 A.2d 1047, 1052 (N.J.Super.Ct.App.Div.2000)).

■ Assuming for the sake of argument that Turbon's "reverse-logistics, manufacturing and re-distribution processes" are trade secrets (Compl. ¶¶ 78–79), Turbon has not alleged facts that could establish HP's use of that secret information. Turbon alleges only that HP "expanded its printing supplies return and recycling program," which could reduce the number of empty print cartridges available to Turbon for remanufacture. (Compl. ¶ 84.) The

allegation that HP "expanded" its recycling program in effect concedes that the program predated HP's business relationship with Turbon and undermines any claim that the program exploits Turbon's secret information. Even if HP implemented the recycling program after it acquired knowledge of Turbon's technical processes, there is no allegation that HP's program used those processes. Rather, Turbon alleges only that HP's recycling program would, if successful, "decrease the number of available empty print cartridges." (*Id.*) To find that HP's recycling program could establish use of Turbon's secret information, the Court would have to find that the "very idea" of refilling empty printer cartridges for sale is a trade secret. *See Spa Time Inc. v. Bally Total Fitness Corp.,* 28 Fed.Appx. 131, 133 (3d Cir.2002) (memorandum opinion). That interpretation is not supported by the Complaint. *See id.*

Turbon's remaining allegations are insufficient as a matter of law. Although Turbon argues that "HP used its knowledge of Turbon's processes to wage a false print-media campaign" and "to convince [the Hospital] not to do business with Turbon" (Turbon Mem. at 14–15), Turbon has not alleged any facts that could establish a connection between HP's knowledge of Turbon's secret manufacturing processes, on the one hand, and HP's allegedly false campaign, on the other. *See Emerson Radio Corp.,* 2000 WL 49361, at *9. The Court therefore finds that Turbon has failed to state a claim for misappropriation of trade secrets.

b. *Unfair Competition*

■ "[U]nfair competition is a business tort, generally consisting of the misappropriation of a business's property by another business." *Sussex Commons Outlets, L.L.C. v. Chelsea Prop. Grp.,* 2010 WL 3772543, at *9 (N.J.Super.Ct.App.Div. Sept. 23, 2010). Turbon's unfair competi-

tion claim is premised on the same factual and legal theories as its misappropriation claim. Because the Court finds that Turbon failed to state a claim for misappropriation, Turbon's unfair competition claim similarly fails. *See id.* at *10.

## B. *FALSE ADVERTISING CLAIM*

### 1. *Standing Under the Lanham Act*

█ █ Turbon alleges that HP's Advertisement and Website are false in violation of section 43(a) of the Lanham Act. *See* 15 U.S.C. § 1125(a); *Hearst Business Publ'g, Inc. v. W.G. Nichols, Inc.,* 76 F.Supp.2d 459, 468 (S.D.N.Y.1999). HP insists that Turbon lacks standing under the Lanham Act because the Advertisement and Website refer only to "bargain toner" and "remanufactured cartridges" generically and not to Turbon's products in particular. But the Lanham Act does not require that the alleged false advertising name Turbon. Rather, to establish standing, Turbon must show "(1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising." *Famous Horse Inc. v. 5th Avenue Photo Inc.,* 624 F.3d 106, 113 (2d Cir.2010). Courts "strongly favor[ ]" standing where, as here, the plaintiff and defendant are in competition. *See id.*

█ Turbon has alleged a reasonable interest to be protected: its reputation for producing functional laser printer cartridges at a low cost. Turbon's ability to sell remanufactured cartridges depends on consumers' perception that Turbon's products, though remanufactured, nonetheless function. *See id.* at 114–15. Turbon also has alleged a reasonable basis for believing that its interest is likely to be damaged by the Advertisement and Website because, if HP's "suggestions of competitive superiority" are "effective," they are likely to cause a loss of sales to Turbon. *See id.* at 113;

*see, e.g., Johnson & Johnson v. Carter–Wallace, Inc.,* 631 F.2d 186, 190 (2d Cir. 1980). The Court therefore finds that Turbon has standing under the Lanham Act. *See, e.g., Salon FAD v. L'Oreal USA, Inc.,* No. 10 Civ. 5063, 2011 WL 70591, at *5 (S.D.N.Y. Jan. 10, 2011).

### 2. *Substantive Claim*

█ To state a claim for false advertising, Turbon must allege facts that could support a reasonable inference that (1) "the challenged advertisement is literally false, *i.e.,* false on its face" or (2) "the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.,* 497 F.3d 144, 153 (2d Cir.2007). The misrepresentation must be "material," in that it would influence consumers' purchasing decisions. *Hearst Business Publ'g,* 76 F.Supp.2d at 468–69.

█ The Complaint cannot support the inference that either one of the challenged advertisements is literally false. As noted above, the Advertisement and the Website refer to the "bargain toner" and "remanufactured cartridge" industry as a whole. They do not make claims about Turbon's products nor differentiate among aftermarket manufacturers. Yet Turbon has not alleged any facts regarding the quality or reliability of after-market cartridges in general that could support a finding of falsity. Instead, Turbon relies on its allegation that "less than 1% of [Turbon's] sold monochrome cartridges are returned to Turbon as defective." (Compl. ¶ 103.) That consumers rarely return Turbon's cartridges to the manufacturer conveys nothing about the subject of the challenged advertisements: the performance of after-market cartridges in general. Put differently, Turbon fails to provide a basis to compare the challenged statements with the "reality" of after-market cartridges. *See Time Warner Cable,* 497 F.3d at 153.

To state a claim under the "impliedly false" theory, Turbon must allege facts that could support a reasonable inference that the challenged advertisement is likely to mislead and confuse consumers. *See Hearst Business Publ'g,* 76 F.Supp.2d at 468–69. The Court may presume that the advertisement is misleading where the defendant's misrepresentation is intentional. *See Johnson & Johnson \* Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.,* 960 F.2d 294, 298–99 (2d Cir.1992). Turbon argues that the Court should infer that HP intended to deceive consumers because HP knew that the challenged advertisements were false. However, as discussed above, the Complaint does not contain facts that could support a reasonable inference that the Advertisement and the Website were false. It follows that Turbon has not alleged facts sufficient to support a reasonable inference that HP knew that the challenged statements were false. For these reasons, the Court grants HP's motion to dismiss Turbon's false advertising claim.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the motion (Docket No. 14) of defendants Hewlett–Packard Co. ("HP") and Hewlett–Packard (Thailand) Ltd. to dismiss in part the Amended Complaint of plaintiff Turbon International, Inc. ("Turbon") is GRANTED as to Turbon's claims for (1) misappropriation of trade secrets by HP (Count Two); (2) unfair competition by HP (Count Three); and (3) false advertising by HP (Count Five).

**SO ORDERED.**