13-172-cv
*Ancile Investment Co. v. Archer Daniels Midland Co.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6th day of September, two thousand and thirteen.

PRESENT:

> GUIDO CALABRESI,
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
>
> *Circuit Judges.*

_____

ANCILE INVESTMENT COMPANY LIMITED,

*Plaintiff-Appellant*,

-v.- No. 13-172-cv

ARCHER DANIELS MIDLAND COMPANY,

*Defendant-Appellee.*

_____

DONNA M. DOBLICK, Reed Smith LLP, Pittsburgh, PA (WENDY H. SCHWARTZ, ANDREA J. PINCUS, Reed Smith LLP, New York, NY, *on the brief*), *for Plaintiff-Appellant*.

JOHN J. O'MALLEY, Seyfarth Shaw LLP, Chicago, IL (JAMES YU, MELISSA STARCIC, Seyfarth Shaw LLP, New York, NY, *on the brief*), *for Defendant-Appellee*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the judgment of the District Court is **AFFIRMED.**

Plaintiff-Appellant Ancile Investment Company Limited ("Ancile") appeals the judgment of the United States District Court for the Southern District of New York (Wood, *J.*), entered December 12, 2012, dismissing the amended complaint in accordance with the district court's Opinion and Order entered November 30, 2012. We assume the parties' familiarity with the underlying facts, procedural history of the case, and issues on appeal.

Under Rule 44.1, a court's determination of foreign law "must be treated as a ruling on a question of law," Fed. R. Civ. P. 44.1, and is therefore subject to *de novo* review. *See Curley v. AMR Corp.*, 153 F.3d 5, 11 (2d Cir. 1998). To that end, "appellate courts, as well as trial courts, may find and apply foreign law," *id.* at 12, and "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence," Fed. R. Civ. P. 44.1. *See Carlisle Ventures, Inc. v. Banco Espanol de Credito, S.A.*, 176 F.3d 601, 604 (2d Cir. 1999) (when interpreting and applying foreign law, "we may consider any relevant material or source, including the legal authorities supplied by the parties on appeal as well as those authorities presented to the district court below"); *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 n.3 (2d Cir. 1968) (Friendly, *J.*) ("Though . . . Rule 44.1 establishes that courts may, in their discretion, examine foreign legal sources independently, it does not require them to do so in the absence of any suggestion that such a course will be fruitful or any help from the parties.").

We review a motion to dismiss pursuant to Rule 12(b)(6) *de novo*, "accepting all factual claims in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Famous Horse, Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106, 108 (2d Cir. 2010). The complaint must

plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Ancile alleges that Defendant-Appellee Archer Daniels Midland Company ("ADM") violated Articles 186 and 187 of the Civil Code of Brazil, which (as both parties agree) prohibit extra-contractual tortious conduct. Specifically, Ancile alleges that ADM breached a duty of good faith which arose because ADM was aware that Ancile was financing non-party Solo Vivo Industria E Commercio De Fertilizantes ("Solo Vivo") in its purchase of shipped goods from ADM, and because ADM accepted payment from Ancile for Solo Vivo's debts.

Neither the plain language of Articles 186 and 187, nor any of the Brazilian cases or secondary sources in the record support a finding that under the facts alleged here, ADM owed a duty of good faith to Ancile of the scope urged by Ancile. Article 186 provides that a person "commits an illict act" when he "by voluntary act or omissions, negligence or imprudence, violates rights and causes damage to another, even though the damage is exclusively moral." Joint App'x 924.[1] Article 186 imposes liability where a defendant undertook the illicit act "either with fault (*i.e.*, negligence) or with the intention to cause damage (*i.e.*, willful misconduct), that violates the plaintiff's right, causing damage." Appellant's Br. at 37. Article 187 provides that "[t]he holder of a right also commits an illicit act if, in exercising it, he manifestly exceeds the limits imposed by its economic or social purpose, by good faith or by good conduct." Joint App'x 924. Article 187 conditions liability on "a defendant's abusive exercise of a legal right, contractual or otherwise." Appellant's Br. at 38.

---

[1] The translations in this Summary Order are from *The Brazilian Civil Code in English* (2008), translated by Leslie Rose. Ancile submitted portions of the book in its opposition to the motion to dismiss. The translations do not materially differ from those submitted by ADM. *See* Joint App'x 117.

Ancile's Brazilian law expert Fabio Ulhoa Coelho ("Coelho") opines that Brazilian law imposes a duty of good faith "on all business relationships whether they are contractual, pre-contractual, or noncontractual relationships," and that "nobody is allowed to behave without good faith." Notably, however, none of the Brazilian court decisions that Coelho cites regarding the duty of good faith support his sweeping explanation of this duty, and none cite Articles 186 and 187. Instead, two of the cases address contractual relationships. The other two cases, although they address extra-contractual relationships, are highly distinguishable from the present case: one involves the responsibility of a managing partner of a company for the checks forged by an associate, and the other deals with good faith in the context of excluding a taxpayer from a treasury program. Ancile asserts that the district court, in discounting these cases, "failed to appreciate the limited role of precedent in the Brazilian legal system." However, the lack of *binding* legal precedent in Brazil – apart from the decisions of a constitutional court – does not displace the common sense notion that a factually distinguishable case will be less persuasive than a case which is factually similar to the underlying dispute. *Cf. Carlisle Ventures*, 176 F.3d at 604 (finding district court's decision insufficiently supported by Spanish law because expert and plaintiff "cite[] no cases or legal authority"); *Henry v. S/S Bermuda Star*, 863 F.2d 1225, 1235-36 (5th Cir. 1989) (distinguishing Panamanian court decisions).[2] Given the obvious factual dissimilarities between the cases on which Coelho relies and the present case, the district court did not err in concluding that the decisions "cited by Professor Coelho are too removed from the factual situation at hand to provide guidance," and that "[l]ack of judicial precedent is a weakness in Ancile's argument."

---

[2] Spain and Panama, like Brazil, have civil law legal systems. *See Curley*, 153 F.3d at 14 (noting that primary sources of law in civil law jurisdictions are the constitution, civil code, and statutes).

4

*Ancile Inv. Co. v. Archer Daniels Midland Co.*, No. 08 Civ. 9492, 2012 WL 6098729, at \*5 (S.D.N.Y. Nov. 30, 2012).[3]

Indeed, Coelho analyzes and describes the relationship between Ancile and ADM as if it were contractual, despite the fact that Ancile's Brazilian law allegations are explicitly extra-contractual. For example, Coelho opines that Civil Code Article 422 provides "the framework for Brazilian courts to analyze the general duty of good faith." Joint App'x at 387.[4] But the explicit terms of that provision, as well as its placement within the "Law of Obligations" section of the Special Part of the Civil Code, demonstrate that Article 422 applies to the duty of good faith arising in contractual relationships and in negotiations leading to contracts. Coelho's reliance on that provision is therefore inapt. Coelho also opines that by "*agree*[*ing*] to receive" payment from Ancile, ADM was "*express*[*ing*] its awareness and *acceptance* of the financing of the commercial transaction by Ancile," and therefore "*consented* to the financing arrangement." Joint App'x at 405

---

[3] On appeal, Ancile also cites a Superior Tribunal of Justice decision, S.T.J., Ap. No. 214.281-SP, Relator: Minister Salvio de Figueiredo Teixeira, 5.15.2003, in support of its argument that ADM owed Ancile a duty of good faith. Although Ancile did not cite this case before the district court, we may consider it on appeal as evidence of foreign law. *See Carlisle Ventures,* 176 F.3d at 604. In the Special Appeal, the Superior Tribunal of Justice reinstated the decision of a lower court, which found the defendant-brokerage liable for improperly retaining the money of the clients of another broker who owed the defendant money. The defendant, despite knowing the money belonged to third-party clients, used their funds without their permission to satisfy the debts of another. *See* Joint App'x at 1544 ("'[the defendant brokerage] had full knowledge that it dealt with third party money, not being allowed at any rate to appropriate those values (owned by third parties) for the settlement of eventual debts of [the other broker] to itself."). Here, however, there is no allegation that ADM improperly retained Ancile's funds (except for a resolved overpayment); rather, Ancile alleges that it purposefully paid ADM to satisfy Solo Vivo's debt, and ADM did not follow Solo Vivo's instructions regarding the release of the bills of lading. The new Tribunal of Justice decision is therefore distinguishable from the instant case, and we find it unhelpful in determining the bounds of a duty of good faith.

[4] Article 422 provides that "*contracting* parties are bound to observe the principles of probity and good faith, both in entering into the contract and its performance." Joint App'x at 928 (emphasis added).

5

(emphases added). However, there are no allegations in the Amended Complaint that ADM ever consented to endorse the bills of lading to Ancile as part of that arrangement, or that ADM agreed to anything beyond accepting payment for Solo Vivo's debts. Nor have the parties put forth any Brazilian law indicating that accepting payment from a third party on behalf of a debtor subjects a creditor to whatever requests or conditions the third party puts forth. Indeed, as ADM persuasively argues, such a legal conclusion would be commercially untenable, rendering ADM subject to the whims of a third-party financier or faced with the prospect of receiving no payment for its shipment.

In sum, Ancile's Amended Complaint fails to state a claim that ADM violated Articles 186 or 187 when it declined to deliver the bills of lading to Ancile and provided Solo Vivo with the goods for which Solo Vivo had contracted. The record does not include, and we have not found, any Brazilian law that would support imposing the duty of good faith urged by Coelho on ADM simply because it accepted payment from Ancile for the debts of Solo Vivo and became aware of a financing arrangement between Ancile and Solo Vivo. Therefore, the district court did not err in dismissing Ancile's claims under Article 186 and 187.

Ancile also argues that the district court erred in relying on ADM's expert Judith Martins-Costa ("Martins-Costa") because she failed to review deposition testimony or exhibits to the depositions in preparing her expert report. However, the list of documents that ADM provided to Martins-Costa for the preparation of her report includes all the relevant contracts and commercial documents referenced in the Amended Complaint, and her description of the facts evinces a full understanding of the relevant factual allegations. The depositions and emails which Ancile argues that Martins-Costa should have reviewed are not pertinent at the motion to dismiss phase anyway, since all the depositions and most of the emails were not referenced in or integral to the complaint.

6

*See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002). Ancile's argument on this basis is therefore unpersuasive.

Finally, turning to Ancile's alternative arguments regarding Civil Code Articles 347, 319 and 321, we conclude that these provisions do not create a viable basis for liability under the Amended Complaint. Regarding Articles 319 and 321, Ancile offers no legal support for the proposition that a third-party financier is entitled to the bills of lading as "evidence of discharge of a debt" when it helps a buyer pay for the purchase of shipped goods, and we therefore conclude that Ancile has failed to state a claim under such a theory. And for the reasons stated by the district court, Ancile has failed to plead a subrogation theory under Article 347.

We have reviewed Ancile's remaining arguments and find them to be without merit. For the foregoing reasons, the judgment of district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

7