Curtis James JACKSON, III, p/k/a 50 Cent, Tomorrow Today Entertainment, Inc., and G–Unit Records, Inc., Plaintiffs,

v.

Lee Q. ODENAT, a/k/a "Q," d/b/a www.worldstarhiphop.com, Worldstar Hip Hop, Inc., Worldstar, LLC, WSHH337, LLC, John Doe LLC(s)/Corporation(s), Defendants.

Lee Q. Odenat, a/k/a "Q," d/b/a www.worldstarhiphop.com, Third–Party Plaintiff,

v.

Yves Mondesir, Third–Party Defendant.

No. 09 Civ. 5583(JFK).

United States District Court, S.D. New York.

Signed March 24, 2014.

Order Denying Reconsideration June 12, 2014.

344

Moritt Hock Hamroff & Horowitz LLP, by: Michael Cardello, III, Grayrobinson, P.A., by: Karen L. Stetson, for Plaintiffs Curtis James Jackson, III, Tomorrow Today Entertainment, Inc., and G–Unit Records, Inc.

Zarin & Associates P.C., by: Scott Zarin, Esq., for Defendants Worldstar Hip Hop, Inc., Worldstar, LLC, WSHH337, LLC, and Defendant/Third–Party Plaintiff Lee Odenat.

Fazzio Law Offices, by: John P. Fazzio, Katherine Braver, for Third–Party Defendant Yves Mondesir.

## OPINION & ORDER

JOHN F. KEENAN, District Judge:

This action arises from Defendant Lee Odenat's allegedly unauthorized use of Plaintiff Curtis Jackson's likeness and intellectual property as well as the intellectual property of Plaintiffs Tomorrow Today Entertainment, Inc. ("Tomorrow Today Entertainment") and G–Unit Records, Inc. ("G–Unit Records") on Odenat's website, www.worldstarhiphop.com.

Odenat has brought third-party claims against Third–Party Defendant Yves Mondesir, alleging that Mondesir held himself out to be Jackson's agent and authorized Odenat's use of Jackson's likeness and Plaintiffs' intellectual property. Odenat seeks contribution from Mondesir on whatever claims Odenat is found liable to Plaintiffs. Odenat also alleges that Mondesir used the worldstarhip.com URL on a mixtape released by Mondesir without Odenat's authorization.

Plaintiffs filed a supplemental complaint against Defendants Worldstar Hip Hop, Inc.; Worldstar, LLC; and WSHH337, LLC, which are business entities formed by Odenat after Plaintiffs filed their complaint against him. Plaintiffs allege that Odenat made fraudulent transfers to those entities and that the entities are Odenat's alter egos.

Plaintiffs and Defendants now cross-move for summary judgment on all of the claims and affirmative defenses. Mondesir moves for summary judgment or, in the alternative, dismissal of the third-party complaint for failure to satisfy minimal pleading requirements. He also moves for an award of attorney's fees. For the reasons set forth below, Plaintiffs' motion is granted in part and denied in part, Defendants' motion is denied in full, and Monde-

sir's motion is granted in part and denied in part.

## I. Background

Plaintiff Curtis Jackson is a hip-hop artist professionally known as "50 Cent." His 2003 debut album, *Get Rich or Die Tryin',* and its follow up, *The Massacre,* have sold over 25 million copies combined. He has also earned a measure of critical acclaim, having been nominated thirteen times for a Grammy Award. (Jackson Decl. ¶ 5.) In addition to his solo career, Jackson is a member of the G–Unit musical group ("G–Unit"), along with members Tony Yayo and Lloyd Banks. (*Id.* ¶ 11; First Odenat Dep. 70–71.)

Jackson also works on the business end of the music industry. He is the president of G–Unit Records and Tomorrow Today Entertainment, both Plaintiffs in this action. G–Unit Records produces and markets G–Unit's music and the music of its members, while Tomorrow Today Entertainment owns and operates the website www.thisis50.com, which covers Jackson, G–Unit, and hip-hop culture and entertainment in general. (Jackson Decl. ¶¶ 12, 22.) Jackson owns registered trademarks for "G–Unit" and "This is 50." (*Id.* ¶¶ 13, 23, Exs. 1–2.)

In November 2003, G–Unit Records and Interscope Records (not a party to this action) registered a copyright for a sound recording titled *Beg for Mercy,* an album released by G–Unit. The registration form noted that the copyright was for "Sound Recording/Pictorial Matter." (Hilderley Decl. Ex. B.) In October 2005, G–Unit Records and Interscope Records registered a copyright for a sound recording titled *Thoughts of a Predicate Felon,* a Tony Yayo solo album. The registration form noted that the copyright was for "Most Sound Recording/Pictorial Matter." (*Id.* Ex. D.)

Third–Party Defendant Yves Mondesir is a disc jockey. He goes by the name "DJ Whoo Kid," and has served as a DJ for G–Unit. He also creates mixtapes, or compilations that include the music of various artists, and distributes them to retailers for promotional purposes. (Mondesir Dep. 26–33.) Sometime in 2005, he released a mixtape titled *Are You a Window Shopper?* that included songs by Jackson. The URL www.worldstarhiphop.com appeared on the very bottom of the back of the mixtape packaging along with "the NEW # 1 mixtape site." (Zarin Decl. Ex. I.)

In July 2005, Defendant Lee Odenat launched the website www.worldstar hiphop.com. The website has featured hip-hop mixtapes, as well as videos of hip-hop musicians. (Odenat Decl. ¶ 5.) From some time in 2005 until March 2009 (with a several month hiatus during 2007 when the website. was inactive), Odenat's website used three different mastheads that included images of Jackson. Although neither. party is sure of the precise dates, they have agreed on a rough timeline. The first masthead was displayed from 2005 until mid–2006 and included images of Jackson, Mondesir, and hip-hop artists Lil Wayne, Jim Jones, Jay–Z, Young Jeezy, and Chamillionaire. (*Id.* ¶ 9, Ex. B.) From mid–2006 through April 2007, the website displayed a different masthead with images of Jackson, Mondesir, G–Unit members Tony Yayo and Lloyd Banks, and hip-hop artist Young Buck. This masthead also included a link labeled "G–Unit Radio." The link led to a webpage displaying thumbnails of the cover art for several mixtapes in a series of mixtapes called "G–Unit Radio." (*Id.* ¶¶ 11–14, Exs. C–D.) The phrase "Click Here To Hear A Sampler" is next to each thumbnail. (*Id.* Ex. D.) Until April 2007, Odenat charged worldstarhiphop.com viewers a fee. From April 2007 until January 2008, the website

was nonoperational. (First Odenat Dep. 147–48.) After relaunch, the site no longer charged a fee and, until March 2009, used a new masthead that featured images of Jackson, Jay–Z, and hip-hop artist Jim Jones. (*Id.* at 24–26; Odenat Decl. Ex. E.)

Plaintiffs commenced this action on June 18, 2009, alleging that Odenat violated their intellectual property rights, used Jackson's image without permission, and misled the public into believing Odenat's website was associated with or endorsed by Jackson and G–Unit Records. The allegedly infringed intellectual property includes the "G–Unit" trademark, photographs of Jackson, a photograph of Tony Yayo from *Thoughts of a Predicate Felon,* and a photograph of Lloyd Banks from *Beg for Mercy.* Plaintiffs seek money damages from and injunctive relief against Odenat under the Copyright Act, 17 U.S.C. §§ 501–505; sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a); and sections 50 and 51 of the New York Civil Rights Law. Plaintiffs also seek money damages from Odenat for unfair competition under New York common law.

Odenat's answer, filed July 28, 2009, raises a number of affirmative defenses, including that Plaintiffs' claims are barred by the doctrines of fair use, license, equitable estoppel, and unclean hands. After the filing of the answer, in September 2009, Odenat incorporated Defendant Worldstar Hip Hop, Inc. in Nevada. (Zarin Decl. Ex. A.)

In October 2010, Plaintiffs consented to the filing of Odenat's third-party complaint in which Mondesir was joined as a third-party defendant. Odenat seeks indemnification from Mondesir under a theory of contributory copyright infringement, contributory trademark infringement, and contribution for violation of New York Civil Rights Law §§ 50, 51. Odenat also seeks money damages for false designation of origin arising out of Mondesir's use of the worldstarhiphop.com URL on *Are You a Window Shopper?.*

After the filing of the third-party complaint, Odenat formed Defendants WSHH337, LLC and Worldstar, LLC as Delaware limited liability companies in February 2011. (Zarin Decl. Exs. B–C.) In July 2011, Worldstar Hip Hop, Inc. registered the trademark "World Star Hip Hop." (*Id.* Ex. E.) Worldstar Hip Hop, Inc. then assigned the trademark to Worldstar LLC in September 2011. (*Id.* Ex. F.)

Plaintiffs filed a supplemental complaint against Worldstar Hip Hop, Inc.; WSHH337, LLC; and Worldstar, LLC. Plaintiffs allege that Odenat created these business entities and transferred assets, including www.worldstarhiphop.com, to them in "not-for-value transactions." Plaintiffs seek to enjoin these entities and hold them liable for the claims against Odenat as his alter ego under a theory of fraudulent transfer.

## II. Discussion

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *see also Zann Kwan v. Andalex Grp. LLC,* 737 F.3d 834, 843 (2d Cir.2013). A fact is "material" if it could affect the outcome of the case under the governing substantive law. *Spinelli v. City of N.Y.,* 579 F.3d 160, 166 (2d Cir. 2009). A dispute over a material fact is "genuine" if there is evidence that could allow a "reasonable jury" to "return a verdict for the nonmoving party." *McElwee v. Cnty. of Orange,* 700 F.3d 635, 640 (2d Cir.2012) (internal quotation marks omitted). The moving party has the initial burden to show the absence of a genuinely

disputed material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the movant's burden is met, then the nonmoving party must provide evidence to show that there is a genuine factual dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court construes the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Plaintiffs' Copyright Infringement Claim

■■■ To succeed on a claim of copyright infringement, a plaintiff must show (1) "ownership of a valid copyright" and (2) "copying of the protectable elements of the copyrighted work." *Scholz Design, Inc. v. Sard Custom Homes, LLC,* 691 F.3d 182, 186 (2d Cir.2012). A certificate of copyright registration is prima facie evidence of the validity of a copyright, although that presumption is rebuttable. *MyWebGrocer, LLC v. Hometown Info, Inc.,* 375 F.3d 190, 192 (2d Cir.2004) (citing 17 U.S.C. § 410(c)).

### 1. Whether Plaintiffs Own a Valid Copyright

■■■ Plaintiffs present a Form SR certificate of registration for the album *Beg for Mercy,* as well as one for the album *Thoughts of a Predicate Felon.* (Hilderley Decl. Exs. B, D.) They also provide an unrebutted declaration attesting to the fact that the picture of Lloyd Banks was included in the "pictorial matter" registered with *Beg for Mercy* and that the picture of Tony Yayo was registered as part of the "pictorial matter" accompanying *Thoughts of a Predicate Felon.* (Hilderley Decl. ¶¶ 2–3.) Defendants do not dispute that the pictures are part of the "pictorial matter"; rather, they argue that the pictures were incorrectly filed as part of the registration for sound recordings. However, the filing of these photographs along with their respective sound recordings was in accordance with Copyright Circular 56, as well as 37 C.F.R. § 202.3(b)(2)(ii)(C). Section 202.3(b)(2)(ii)(C) provides:

> In cases where a work contains elements of authorship in which copyright is claimed which fall into two or more classes, the application should be submitted in the class most appropriate to the type of authorship that predominates in the work as a whole. However, *in any case where registration is sought for a work consisting of or including a sound recording in which copyright is claimed, the application shall be submitted on Form SR.*

37 C.F.R. § 202.3(b)(2)(ii)(C) (emphasis added). Circular 56, which covers registration for sound recordings, also contemplates the filing of "artwork, photographs, and/or liner notes" along with a sound recording. U.S. Copyright Office, Circular 56: Copyright Registration for Sound Recordings, at 3 (reviewed 2012). Contra Defendants' argument, there does not appear to be a requirement that each accompanying element include a separate title.

Defendants also challenge the authorship of the photographs by claiming that the photographers should have been listed as the authors instead of Interscope Records and G–Unit Records. The registrations clearly indicate that the contributions were works made for hire, meaning that Interscope Records and G–Unit Records are presumed to be the co-authors of the works. 17 U.S.C. § 201(b); *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). Defendants attempt to rebut this presumption with the work-for-hire agreement between Interscope Records and Julian Alexander, the art director of Slang

Inc. According to Defendants, this document rebuts the presumption of authorship because it does not include the names of the photographers. However, the agreement clearly contemplates Alexander subcontracting photography to other individuals. (Supp. Zarin Decl. Ex. 2. ¶ 1.) Thus, Defendants have not provided evidence to rebut the presumption of authorship in Interscope Records and G–Unit Records. The Court finds that Plaintiffs own a valid copyright in the photograph of Tony Yayo and the photograph of Lloyd Banks.

Defendants assert that Plaintiffs did not produce the pictures during discovery. However, according to the unrebutted Hilderley Declaration, the images were deposited as part of the pictorial material accompanying the registration for the albums and are therefore part of the public record maintained by the Copyright Office. *See* 17 U.S.C. § 705; 37 C.F.R. § 201.2(b)(1). As a public record, it was available to Defendants, and Plaintiffs were not required to produce it. *S.E.C. v. Strauss,* 94 Civ. 4150, 2009 WL 3459204, at *11–12 (S.D.N.Y. Oct. 28, 2009).

### 2. Whether Defendants Copied Protectable Elements

▰▰ Defendants do not contest Plaintiffs' assertion that the images of Tony Yayo and Lloyd Banks used on the second masthead are actual copies of the photographs filed as pictorial matter along with the albums filed with the Copyright Office. (Def. Opp. Mem. 9; Def. Reply Mem. 3.) Nor do Defendants claim to have independently created the pictures used on the masthead. Rather, Defendants argue that there are no substantial similarities between the copyrighted photographs and the images used. However, Plaintiffs only need to show a substantial similarity when

there is no evidence of actual direct copying. *See Procter & Gamble Co. v. Colgate– Palmolive Co.,* 199 F.3d 74, 77 (2d Cir. 1999); 3 William F. Patry, Patry on Copyright § 9:21 (2012). Furthermore, a rational jury comparing the pictures and the images on the masthead could only reach one inescapable conclusion: the images on the masthead are substantially similar because they are exact copies. Aside from the obvious cropping, the only discernible difference is that the picture of Lloyd Banks is flipped so that he is facing right instead of left.

Insofar as Defendants challenge whether the photographs were copyrightable, the images at issue exceed the rather low bar for copyright protection of photographs. *E. Am. Trio Prods., Inc. v. Tang Elec. Corp.,* 97 F.Supp.2d 395, 417–18 (S.D.N.Y.2000). This is also more than de minimis copying. Although the images on the masthead appear to have been cropped, they are recognizable likenesses of both Yayo and Banks, the subjects of the copyrightable photographs. *See Rogers v. Koons,* 960 F.2d 301, 308 (2d Cir. 1992) ("[N]o copier may defend the act of plagiarism by pointing out how much of the copy he has not pirated.").

Defendants' answer makes no claim that Jackson or Mondesir ever authorized Odenat to use the copyrighted photos. Nor do they make such an assertion in their moving papers.[1] As to copyright infringement, Plaintiffs are entitled to summary judgment.

### C. Plaintiffs' Right of Publicity Claim Under New York Civil Rights Law Section 50 and 51

▰▰ In New York, the right to privacy and corresponding right of publicity are

---

1. Notwithstanding the absence of such an assertion here, Odenat's third-party complaint alleges that Mondesir authorized Odenat to use the images of Lloyd Banks and Tony Yayo.

both set forth in sections 50 and 51 of the New York Civil Rights Law. *Myskina v. Conde Nast Publ'ns, Inc.*, 386 F.Supp.2d 409, 414 (S.D.N.Y.2005). A successful right of publicity claim must show "(1) use of plaintiff's name, portrait, picture or voice (2) for advertising purposes or for the purposes of trade (3) without consent and (4) within the state of New York." *Hoepker v. Kruger*, 200 F.Supp.2d 340, 348 (S.D.N.Y.2002) (internal quotation marks omitted). Defendants only contest the first prong. Although they admit that the three images are in fact of Jackson, they argue that the images are not recognizable likenesses of him. Defendants also assert that Plaintiffs' claim is barred by the statute of limitations.

### 1. Whether the Photographs Are Recognizable Likenesses of Jackson

■ Whether a photo is a recognizable likeness of the plaintiff is ordinarily a jury question. *Allen v. Nat'l Video, Inc.*, 610 F.Supp. 612, 623 (S.D.N.Y.1985). Summary judgment is appropriate, however, where the person in the photograph is identifiable by someone familiar with him, even if the pictures are of poor visual quality. *See Negri v. Schering Corp.*, 333 F.Supp. 101, 103–05 (S.D.N.Y.1971) (granting summary judgment after finding actress's features were "quite clear and characteristic" in the advertisement); *Shamsky v. Garan, Inc.*, 167 Misc.2d 149, 632 N.Y.S.2d 930, 933–34, 937 (Sup.1995).

The three images at issue are shots of Jackson's face. The first two mastheads use images of Jackson directly facing the camera, while the third masthead includes an image of Jackson in profile. The highest quality image of the first masthead is part of Exhibit 1 to the Sinnreich Declaration, bearing the stamp 00007. (Sinnreich Decl. Ex. 1.) The image shows a shot of

the front of Jackson above the waist, with one arm and a portion of his torso obscured. He is wearing a shirt, a chain, and a baseball cap. The cap casts a dark shadow over most of his forehead and eyes. Despite the shadow, the viewer can make out the shape of Jackson's face. His nose, mouth, cheeks, and the corner of one eye are observable.

Odenat's Declaration includes the best copy of the second masthead. (Odenat Decl. Ex. D.) The image of Jackson is small. Although somewhat pixilated, the image clearly captures the shape of Jackson's face. All of his features are visible.

The Odenat Declaration also presents the best quality copy of the third masthead. (*Id.* Ex. E.) The image shows the shape of Jackson's profile, with the back of his head in complete shadow save for his ear. His face, however, is illuminated, and his features are easily discernible.

As each picture depicts significant portions of Jackson's face, the Court concludes that they are recognizable likenesses of Jackson because someone familiar with Jackson would be able to identify him in each of the mastheads. *See Cohen v. Herbal Concepts, Inc.*, 63 N.Y.2d 379, 385, 482 N.Y.S.2d 457, 472 N.E.2d 307 (1984). This finding is supported by the fact that during depositions several people, most notably Odenat, were able to identify Jackson on each of the mastheads. (First Odenat Dep. 71, 201; Second Odenat Dep. 53.) The cases cited by Defendants are inapposite because none of them concern photographs of a plaintiff's face. There is thus no genuine dispute regarding Defendants' use of a photograph of Jackson, and Plaintiffs have therefore demonstrated their entitlement to summary judgment on this issue.

### 2. Statute of Limitations

■ Defendants also assert a statute of limitations defense against Plaintiffs' right

of publicity claim. As explained in this Court's previous Order, "the proper method for raising a statute of limitations defense is to interpose it in the Answer." (ECF No. 146.) Defendants did not assert a statute of limitations defense in their answer as to the Plaintiffs' New York Civil Rights Law claim, and now seek leave to amend. (Def. Reply Mem. 4 n. 7.) Because we are well past the December 15, 2009 deadline to amend pleadings, Defendants must show good cause. *See* Fed.R.Civ.P. 16(b)(4).

■ The touchstone of good cause is the moving party's diligence. *See Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir. 2009). Defendants' only justification for not pleading the statute of limitations defense is that they meant to interpose a general statute of limitations defense but erroneously tied the defense to the copyright claim. They had over four months after they interposed the answer to catch their mistake before the Court's scheduling deadline. After the deadline, they had over three years to bring the mistake to the Court's attention. That Defendants' June 7, 2011 letter suggested the defense does not save the defense because that was nearly a year and a half after the missed deadline. This does not demonstrate diligence. *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) (holding that district court did not abuse its discretion in denying leave to amend complaint after delay of more than a year); *Scott v. City of N.Y. Dep't of Corr.,* No. 04 Civ. 9638, 2007 WL 4178405, at *4 (S.D.N.Y. Nov. 26, 2007) (finding that counsel's mistake or inadvertence did not support good cause). Leave to amend is therefore denied, and the statute of limitations will not bar entry of judgment in favor of Plaintiffs on this issue.

## D. Plaintiffs' False Endorsement Claim

■ Section 43(a)(1) of the Lanham Act prohibits the use of:

> any word, term, name, symbol ... or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ....

15 U.S.C. § 1125(a)(1). A trademark is not required for a successful section 43(a) claim, which "mak[es] certain types of unfair competition federal statutory torts, whether or not they involve infringement of a registered trademark." *Famous Horse Inc. v. 5th Ave. Photo Inc.,* 624 F.3d 106, 110 (2d Cir.2010) (internal quotation marks omitted). Plaintiffs assert that the use of Jackson's persona and the "G–Unit" mark on the mastheads constitutes false endorsement and unfair competition under the Lanham Act.

■ Defendants do not challenge Plaintiffs' characterization of the "G–Unit" mark claim as one for false endorsement. While the term "false endorsement" often describes claims concerning celebrity personas, the Second Circuit has recognized that a false endorsement claim can be premised on "confusion between [plaintiff's] *product* and the alleged infringer's product." *Famous Horse,* 624 F.3d at 108 (emphasis added) (internal quotation marks omitted). A claim for false endorsement under section 43(a)(1)(A) must allege "that the defendant, (1) in commerce, (2) made a false or misleading representation of fact (3) in connection with goods or services (4) that is likely to cause

consumer confusion as to origin, sponsorship, or approval of the goods or services." *Burck v. Mars, Inc.,* 571 F.Supp.2d 446, 455 (S.D.N.Y.2008). Plaintiffs allege that Defendants used the images of Jackson and the "G–Unit" mark on the worldstarhiphop.com mastheads in a way that is likely to confuse advertisers and website viewers as to whether Jackson sponsored or approved the website. Defendants raise two threshold issues concerning Plaintiffs' persona claim, and further challenge the likelihood of confusion prong.

The Court first addresses Defendants' two arguments regarding Plaintiffs' persona claim. First, Defendants claim that Plaintiffs never previously based their claims on Jackson's persona. This argument is plainly without merit. Plaintiffs' complaint premised the section 43 claim on the use of both the G–Unit trademark and of the "image and likeness" of Jackson. (Compl.¶¶ 44–46.) Persona is synonymous with image. *See* Merriam–Webster's Collegiate Dictionary 924 (11th ed.2011). Courts have referred to a celebrity's trademark-like interest in his or her image, likeness, persona, and identity. *See, e.g., Bruce Lee Enters., LLC v. A.V.E.L.A., Inc.,* No. 10 Civ. 2333, 2011 WL 1327137, at *4 (S.D.N.Y. Mar. 31, 2011) (collecting cases that refer to a celebrity's interest); *see also* 1 J. Thomas McCarthy, The Rights of Publicity and Privacy § 4:46 (2d ed.2013).

Second, Defendants assert that the Second Circuit has never recognized a trademark right in a persona. This argument is equally futile. Several courts have recognized that celebrities have a trademark-like interest in their individual personas. *See Bondar v. LASplash Cosmetics,* No. 12 Civ. 1417, 2012 WL 6150859, at *5 (S.D.N.Y. Dec. 11, 2012); *Bruce Lee Enters.,* 2011 WL 1327137, at *4; *see also ETW Corp. v. Jireh Publ'g, Inc.,* 332 F.3d

915, 925 (6th Cir.2003). Defendants also misconstrue the caselaw on this point. Both *Pirone v. MacMillan, Inc.,* 894 F.2d 579 (2d Cir.1990), and *ETW Corp.* reject a celebrity's persona as a trademark for purposes of section 32(a), not section 43(a). Moreover, both cases, at least implicitly, recognize that photographs of celebrities can form the basis of a false endorsement claim. *Pirone,* 894 F.2d at 584 (recognizing a picture of celebrity as symbol under section 43(a) but holding that there was no sponsorship or likelihood of confusion); *ETW Corp.,* 332 F.3d at 925 ("Courts have recognized false endorsement claims under § 43(a) of the Lanham Act where a celebrity's image or persona is used in association with a product so as to imply that the celebrity endorses the product.").

 The parties also dispute the likelihood of consumer confusion. Likelihood of confusion is a factual question, but summary judgment may be appropriate where the evidence leads to only one conclusion. *See Cadbury Beverages, Inc. v. Cott Corp.,* 73 F.3d 474, 478 (2d Cir.1996). For a section 43(a) claim, "[t]he public's belief that the mark's owner *sponsored or otherwise approved* the use of the trademark satisfies the confusion requirement." *Famous Horse,* 624 F.3d at 109 (internal quotation marks omitted). In assessing the likelihood of confusion, courts in the Second Circuit apply the eight-factor test laid out in *Polaroid Corp. v. Polarad Elecs. Corp.,* 287 F.2d 492 (2d Cir.1961). *See Kelly–Brown v. Winfrey,* 717 F.3d 295, 307 (2d Cir.2013). These factors are:

> (1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6)

evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market.

*Id.* (internal quotation marks omitted). "No single factor is dispositive, nor is a court limited to consideration of only these factors." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.,* 454 F.3d 108, 118 (2d Cir.2006) (internal quotation marks omitted). Moreover, application of the factors is not meant to be rote; rather, a court should keep in mind that the ultimate question is whether the use in its totality would likely confuse consumers. *Kelly–Brown,* 717 F.3d at 307.

 Courts adjust the factors when dealing with false endorsement claims. In such cases, the quality of the products and "bridging the gap" are often not considered. *See Standard & Poor's Corp. v. Commodity Exch., Inc.,* 683 F.2d 704, 708 (2d Cir.1982); *Oliveira v. Frito–Lay, Inc.,* No. 96 Civ. 9289, 1997 WL 324042, at *3 (S.D.N.Y. June 13, 1997); *Nat'l Video,* 610 F.Supp. at 627. In a celebrity endorsement case, the "mark" is the plaintiff's persona and the "strength of the mark" refers to the level of recognition that the plaintiff has among the consumers to whom the advertisements are directed. *Bruce Lee Enters.,* 2011 WL 1327137, at *20; *Nat'l Video,* 610 F.Supp. at 627.

Before delving into the analysis, a more detailed description of each masthead is in order. Defendants' first masthead, which they displayed from 2005 until mid–2006, takes up roughly a third of a printed page. The top fifth of the masthead is a banner. The left half of that banner is a rectangular link to sign up for a monthly membership. On the right are two smaller rectangular links: one contains the words "Largest Official Rap Music/DVDS Network IPOD Compatible" and the other is a link to the "WSHH MIXTAPE VAULT." Beneath those banners is a city background. In the foreground are the images of seven hip-hop artists who take up between a third and a half of the space below the banner. The musicians are arranged in a V shape, with the person in the center, identified as Mondesir, appearing closest and largest. To his left and right, three artists on each side fan out with each subsequent artist appearing further back and smaller. An image of Jackson appears to Mondesir's immediate right. He is partially obscured by Mondesir. The "World Star Hip Hop" logo appears above the artists on Mondesir's left but below the banner at the top of the masthead. The logo takes up approximately an eighth of the entire masthead. The logo partially obscures the top of the head of the artist to Mondesir's immediate left and is partially obscured by Mondesir's head.

The second masthead, displayed from mid–2006 until April 2007, takes up roughly a quarter of a printed page. Slightly more than the top third appears to be black with six small blue triangles spread across it. At the bottom of that top third are six rectangular links labeled "Home," "Members," "G–Unit Radio," "Mixtapes," "Join Now," and "FAQS." The lower two thirds of the masthead has what appears to be a city skyline. The lower left hand corner of the skyline has a "WSHH" logo that takes up roughly a sixth of the masthead. Immediately above the logo are the images of five hip-hop artists who together take up a little less than a sixth of the page. Jackson appears in the upper left hand corner of this group of artists. Mondesir is toward the front. Banks and Yayo, two other members of G–Unit, are also included.

The third masthead, used from January 2008 until March 2009, includes a "World

Star Hip Hop" logo that takes up approximately a ninth of the masthead. It occupies the bottom, center ninth. Two figures loom over each side of the logo. To the left is an image of Jackson in profile, facing the logo, that is slightly less than a third of the masthead. To his left (toward the back of his head) are two much smaller images of hip-hop artists. Mirroring them are three images of what appear to be, and what the parties have indentified as, robot heads. Like the images of the hip-hop artists, there are two smaller robots and one much larger one.

The Court's review of each masthead does not lead to one inevitable conclusion regarding the likelihood of consumer confusion. A rational jury evaluating the mastheads could conclude that Jackson or G-Unit sponsored or approved of worldstarhiphop.com, or the jury could conclude that no such confusion was likely.

It is no doubt generally true that a celebrity's "mere presence [in an advertisement] is inescapably to be interpreted as an endorsement." *Nat'l Video,* 610 F.Supp. at 627 n. 8. However, the use of a celebrity photograph does not always confuse as to sponsorship. In *Pirone,* defendant used an actual picture of Babe Ruth in a baseball calendar. The Court nevertheless held that, as a matter of law, there was no likelihood of confusion as to sponsorship. This was partly because there were "numerous, prominent references" to the publisher and the calendar used photographs of several different ballplayers, who were the subject matter of the calendar.

The Court notes that there is some similarity between the use of the photographs of baseball players at issue in *Pirone* and the photographs of the hip-hop artists used on the masthead here. That there are several hip-hop musicians on each masthead could suggest that the masthead is merely identifying the subject matter of the website—hip hop—and makes confusion as to sponsorship less likely. Although, for the reasons discussed below, Defendants' use of the images does not support a fair use defense, the images of Jackson or "G-Unit Radio" used with other hip-hop artists could imply something other than sponsorship or affiliation. Of course, unlike the baseball pictures in *Pirone,* the pictures of the artists themselves are not the subject matter of the website. Because the Court finds that a rational jury could conclude that consumers would not be confused as to Jackson's sponsorship of worldstarhiphop.com, Plaintiffs are not entitled to summary judgment on this issue.

Having determined that the overall impression of each masthead does not inevitably lead to one conclusion over the other, the Court must nevertheless evaluate the evidence as to each of the *Polaroid* factors to determine whether Plaintiffs have proffered sufficient evidence to survive Defendants' motion for summary judgment. As detailed below, the Court finds that Plaintiffs have presented sufficient evidence for a jury to conclude that each of the *Polaroid* factors weighs in Plaintiffs' favor.

### 1. Strength of Mark and Level of Recognition

Although Defendants now challenge the strength of the G-Unit trademark and Jackson's persona, Defendant Odenat has previously acknowledged that both the trademark and Jackson are "well known." Specifically, Odenat acknowledged that the G-Unit clothing brand is well known and that Jackson has been well known, particularly among hip-hop fans, since his first album was released in 2003. (First Odenat Dep. 87, 151.)

Plaintiffs have also, by way of a declaration, supported the strength of Jackson's

persona and the G–Unit trademark.[2] Jackson has sold over 25 million copies of his albums, with his debut album attaining international success. This success pre-dates the launch of Defendants' website in 2005, as Jackson's debut album was re-leased in 2003, selling nearly 900,000 units in the first four days. He has also been nominated thirteen times for a Grammy Award. As for the "G–Unit" mark, it has sales exceeding $150 million. (Jackson Decl. ¶¶ 5, 14.) The Court finds that Plaintiffs have adduced sufficient evidence for a jury to conclude that this factor weighs in their favor.

## 2. Similarity

Defendants do not dispute that they used actual pictures of Jackson. As to "G–Unit" mark, Defendants try to distinguish their use of "G–Unit Radio" on Odenat's website. This distinction is unavailing. "G–Unit" is clearly the dominant part of "G–Unit Radio," as "G–Unit" is distinct and "Radio" is generic. *See Morningside Grp. Ltd. v. Morningside Capital Grp., LLC,* 182 F.3d 133, 140 (2d Cir.1999); *Golden Door, Inc. v. Odisho,* 646 F.2d 347, 350–51 (9th Cir.1980). The Court notes, however, that it appears that the "G–Unit" mark is sometimes written in a stylized cursive font. (Zarin Decl. Ex. P.) The masthead does not use this distinctive font, which could weigh in Defendants' favor. Nevertheless, the Court finds that Plain-tiffs have adduced sufficient evidence for a jury to conclude that this factor weighs in their favor.

## 3. Proximity

In examining proximity, courts look to the overlap or "intersection" of audiences or consumers. *Tin Pan Apple, Inc. v. Miller Brewing Co.,* 737 F.Supp. 826, 835 (S.D.N.Y.1990); *Allen v. Men's World Outlet, Inc.,* 679 F.Supp. 360, 368 (S.D.N.Y.1988). Jackson is a hip-hop art-ist. The G–Unit trademarks have been used by Plaintiffs as the name of a hip-hop group, a hip-hop record label, and an "ur-ban clothing line." (Jackson Decl. ¶¶ 11–13.) Defendants' website, worldstarhi-phop.com, targets hip-hop fans by posting hip-hop mixtapes and video clips featuring hip-hop artists. (Odenat Decl. 151–52; Def. Am. Statement of Undisputed Facts ¶ 1). There is sufficient evidence for a jury to conclude that Jackson and Defen-dants both cater to hip-hop fans.

Defendants assert that there is no prox-imity between worldstarhiphop.com and Jackson's interests in his persona and the "G–Unit" trademark because Jackson and G–Unit are not well known for the creation of a website. Defendants' argument is wrong for two reasons. First, it makes no difference whether G–Unit and Jackson are better known for hip-hop music and clothing than for operating a hip-hop web-site. Courts in this circuit have long rec-ognized that the parties need not be in actual competition with each other when the claim is based on false affiliation or

---

**2.** Defendants urge this Court to use all six factors outlined in *Thompson Med. Co. v. Pfiz-er, Inc.,* 753 F.2d 208, 217 (2d Cir.1985). However, the Second Circuit used those fac-tors in the context of showing "secondary meaning" and cautioned that "no single fac-tor is determinative and every element need not be proved." *Id.* (citations and internal quotation marks omitted). Defendants do not challenge the "inherent distinctiveness" of Jackson's persona or the "G–Unit" trade-mark. (Def. Opp. Mem. 35.) Thus, second-ary meaning is not required. *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) ("The general rule regarding distinctiveness is clear: An identifying mark is distinctive and capable of being protected if it *either* (1) is inherently distinctive *or* (2) has acquired distinctiveness through secondary meaning."); *see also* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:1.50 (4th ed.2013).

sponsorship. *See Oliveira*, 1997 WL 324042, at *4; *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 467 F.Supp. 366, 374 (S.D.N.Y.), *aff'd*, 604 F.2d 200 (2d Cir.1979). Second, Jackson has operated a website, www.thisis50.com, since 2007. (Jackson Decl. ¶ 22.) Therefore, Jackson may have been in actual competition with worldstarhiphop.com since then. For all of these reasons, the Court finds that Plaintiffs have put forth sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 4. Actual Consumer Confusion

Plaintiffs' evidence to support actual confusion consists of an expert's report, an email obtained from Defendants during discovery, and anecdotes from Jackson and his employees.[3] The Court first notes that it does not find Plaintiffs' expert's report conclusive of actual consumer confusion. The report mentions that Google's Ad-Words "Keyword Tool" shows a disproportionate association between worldstarhiphop.com and search terms related to Jackson. (Sinnreich Decl. ¶¶ 21–23.) However, it is not clear to the Court how, if at all, that association is attributable to the mastheads because it is possible that the association derives from the website's hosting of videos of Jackson. The Court also notes that the association could be attributable in part to public interest surrounding Jackson's alleged hacking of worldstarhip.com, which, whether it happened or not, received some media attention four months before Plaintiffs' expert used the "Keyword Tool." (Zarin Decl. Exs. K–L.)

The email and anecdotes are evidence that a jury could consider as to this factor. The Court notes that "actual confusion

need not be shown to prevail under the Lanham Act." *See Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir.1986). Plaintiffs have therefore provided sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 5. Evidence of Bad Faith

Plaintiffs argue that bad faith can be inferred from several portions of Odenat's testimony. First, Odenat admitted that he had prior knowledge of Jackson's and G-Unit's celebrity. (First Odenat Dep. 85, 87, 150–51.) Second, Odenat requested that his designer include the "hottest rappers" on the third masthead. (*Id.* at 25, 47.) Third, Odenat used the image and mark without first asking Jackson. Defendants assert that Odenat acted in good faith because he thought he had received permission from Mondesir.

Odenat's knowledge of Jackson's persona and the G-Unit mark, coupled with his request for the "hottest rappers" could allow a reasonable jury to conclude that "defendant in adopting its mark intended to capitalize on plaintiff's good will." *See EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 66 (2d Cir.2000). Plaintiffs have therefore provided sufficient evidence for a jury to conclude that this factor weighs in their favor.

### 6. Sophistication of Consumers in the Relevant Market

The parties dispute the identity of the relevant consumers. Plaintiffs argue that it should be advertisers as well as viewers of the website. Defendants disagree regarding website viewers, but agree that advertisers are relevant. Defendants urge

---

**3.** Plaintiffs also submitted four emails received by the advertising agency for thisis50.com. (Norton Decl. Ex.) However, Defendants allege, and Plaintiffs do not dispute, that these emails were not produced during discovery. The Court therefore did not consider the emails in its balancing of this factor.

the Court to also consider musicians wishing to post content on worldstarhiphop.com as consumers.

Advertisers and musicians that seek to post content on the website are relevant consumers. Website viewers are also clearly relevant consumers for the first two mastheads. Worldstarhiphop.com used both mastheads while it charged viewers a fee. (First Odenat Dep. 146–47.) Additionally, the Court finds that website viewers are relevant customers even when not charged because the website traffic from those viewers makes a website more attractive to advertisers. Thus, the sophistication of the website viewers is also an appropriate consideration for the third masthead.

As set forth above, a rational jury could conclude that there is or there is not a likelihood of confusion. Plaintiffs have provided sufficient evidence as to each *Polaroid* factor to demonstrate a genuine dispute as to the likelihood of confusion. For these reasons, neither party is entitled to summary judgment on this issue.

### E. Plaintiffs' Trademark Infringement Claim

■■■ Section 32(a)(1) of the Lanham Act prohibits the

> use in commerce [of] any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . .

15 U.S.C. § 1114(a)(1). There is a two-pronged test for infringement under section 32(a): (1) whether the mark is "entitled to protection" and (2) whether there is a likelihood of consumer confusion as to origin or sponsorship of defendant's goods. *Virgin Enters. Ltd. v. Nawab,* 335 F.3d 141, 146 (2d Cir.2003). Defendants do not contest the validity of the "G–Unit" trademark.[4] Therefore, the only consideration is whether there is a likelihood of confusion.

As previously discussed, the Court has found sufficient evidence for a jury to consider likelihood of confusion but concludes that a jury is in the best position to decide the ultimate question of whether consumers are likely to be confused as to sponsorship. However, Defendants contend that they made a nominative fair use of the "G–Unit" mark.

■■■ The doctrine of nominative fair use originated in the Ninth Circuit. *See New Kids on the Block v. News Am. Publ'g, Inc.,* 971 F.2d 302, 307–09 (9th Cir.1992). A nominative fair use occurs when plaintiff's mark is used to describe plaintiff's own product. *Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1151 (9th Cir.2002). In the Ninth Circuit, it provides an alternative way to analyze likelihood of confusion. *See id.* The Third Circuit allows it to be used as an affirmative defense. *Century 21 Real Estate Corp. v. Lendingtree, Inc.,* 425 F.3d 211, 228–31 (3d Cir.2005). The Second Circuit has neither adopted nor rejected the doctrine, but has recognized that a "defendant may lawfully use a plaintiff's trademark where doing so is necessary to describe the plaintiff's product and does not imply a false affiliation or endorsement by the plaintiff of the defendant." *Tiffany (NJ) Inc. v. eBay Inc.,* 600 F.3d 93, 102–03 (2d Cir.2010).

As an initial matter, although Defendants label nominative fair use an affirma-

---

**4.** Insofar as Defendants' argument concerning the strength of the "G–Unit" mark can be construed as challenging its entitlement to protection, that argument is rejected for the reasons discussed *supra* at footnote 2.

tive defense, they ask the Court to utilize it as a replacement for the likelihood of confusion analysis, in the manner of the Ninth Circuit. (Def. Opp. Mem. 48.) Thus, the Court need not address whether it operates as an affirmative defense.

Under either the Ninth Circuit's or the Second Circuit's standard, Defendants are not entitled to summary judgment. While the use of the "G–Unit Radio" button seems necessary to identify the mixtape series of the same name, its placement on the masthead along with members of G–Unit could imply false affiliation or endorsement by Jackson, the owner of the "G–Unit" mark. This clearly implicates the likelihood of confusion analysis and requires an evaluation of the masthead in context. For the reasons described in this Opinion, that is a matter best left for the jury. Because the likelihood of confusion is a genuine dispute of a material fact, neither party is entitled to summary judgment on this issue.

### F. Plaintiffs' Common Law Unfair Competition Claim

■■■ To succeed on their common law unfair competition claim, Plaintiffs must (1) establish either actual confusion or a likelihood of confusion; and (2) must make "some showing of bad faith" on Defendants' part. *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,* 58 F.3d 27, 34 (2d Cir.1995). As discussed above, Plaintiffs have adduced sufficient evidence to raise material questions of fact concerning Defendants' bad faith as well as for both actual confusion and a likelihood of confusion concerning Defendants' use of Plaintiffs' intellectual property. However, as neither prong is established as a matter of law, neither party is entitled to summary judgment on this issue.

### G. Defendants' Affirmative Defenses

Plaintiffs argue that none of Defendants' affirmative defenses warrants summary judgment for Defendants, nor do the defenses preclude summary judgment in Plaintiffs' favor. Defendants contend that the defenses of fair use, nominative fair use, implied license, equitable estoppel, and unclean hands bar entry of summary judgment in favor of Plaintiffs, and warrants summary judgment for Defendants on the trademark and right of publicity claims.

As a preliminary matter, although Plaintiffs challenged Defendants' first, second, third, fourth, fifth, sixth, seventh, twelfth, and thirteenth affirmative defenses in their moving papers, Defendants' response provides no evidence nor advances any arguments to support these defenses. The Court thus deems them abandoned. *Summit Health, Inc. v. APS Healthcare Bethesda, Inc.,* 993 F.Supp.2d 379, 398, No. 11 Civ. 9718, 2014 WL 288050, at *12 (S.D.N.Y. Jan. 24, 2014) ("In light of Defendant's failure to respond to Plaintiff's motion with respect to duress, the Court deems that affirmative defense abandoned."). As discussed above, nominative fair use may inform the likelihood of confusion analysis, but it is no longer considered an affirmative defense. The Court now turns to the four remaining disputed affirmative defenses.

#### 1. Fair Use

■■■ Defendants assert fair use as an affirmative defense only as to their display of Jackson's persona. A successful fair use defense must establish that the use of the mark was "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly–Brown,* 717 F.3d at 308.[5] Defendants argue that they dis-

---

**5.** Defendants attempt to bolster this defense with reference to 15 U.S.C. § 1115(b)(4).

played Jackson's image to indicate that visitors to the website could find video clips of Jackson there. To support this defense, Defendants include an exhibit that includes printouts of photographic thumbnails that Defendants assert represent video clips featuring Jackson that appeared on worldstarhiphop.com.

The Court need not address this evidence because the fair use defense fails as a matter of law on the second prong. A descriptive term is one that has a primary meaning that can describe characteristics of a product. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:45 (4th ed.2013). A trademark may protect a term's secondary meaning but does not prevent others from using the term in its primary, descriptive sense. *Id.* While the Second Circuit has recognized that an image or shape may be descriptive, it has done so in the context of images or shapes that evoke characteristics of the product. *See Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir.1995) (holding that a pine-tree shape describes the pine scent of the product as well as the Christmas season during which the product was sold).

Defendants provide no authority to support the fair use of a celebrity's image or likeness. This is not surprising, as a celebrity's image, standing alone, only evokes that celebrity's persona. Jackson's image does not, by itself, describe anything about Defendants' website. Defendants ask the Court to infer that the image of Jackson conveys that worldstarhiphop.com features videos of Jackson. But the image alone cannot and does not convey the presence of videos. Moreover, the

mastheads give no indication that the website contains videos of the hip-hop artists whose images are used. The second and third mastheads do not even include the word "video."

Thus, the images, even viewed in the context of each masthead, do not convey to a viewer that the website contains videos of Jackson. The images are therefore not used in a descriptive sense and the fair use defense fails as a matter of law. This affirmative defense will not bar entry of judgment in favor of Plaintiffs and is therefore stricken.

### 2. Implied License

■ Defendants' theory of implied license is that Mondesir's course of conduct with Odenat gave rise to an implied license to use Jackson's persona and the G–Unit trademark. According to Defendants, Mondesir provided Odenat with mixtapes including songs by Jackson to make them available on worldstarhiphop.com. Defendants allege that in 2005, and again in 2006, Mondesir expressly informed Odenat that Odenat could use the "G–Unit" mark and Jackson's image on worldstarhiphop.com. During this time, Mondesir distributed the mixtape *Are You a Window Shopper?* with the worldstarhiphop.com URL. Defendants also contend that Mondesir gave Odenat express permission to use the third masthead in 2008. Defendants assert that Jackson was aware of the use of his images on the website as early as 2007 but did not ask for the images to be removed, and that Jackson told Odenat not to take the third masthead down during a meeting in October 2008.

However, § 1115 relates only to registered trademarks, and, as Defendants have gone to great pains to point out, a persona is not an actual trademark. As § 1115 incorporates the common law "fair use" defense, the analysis as to unregistered marks in a Section 43(a) context is the same as for registered marks. *See* 2 McCarthy on Trademarks and Unfair Competition § 11:49.

Both parties agree that Mondesir needed apparent authority in order to bind Jackson. In order for Mondesir to have apparent authority, (1) Jackson "must have been responsible for the appearance of authority" by words or conduct communicated to Odenat, and (2) Odenat must have been reasonable in relying on Mondesir's representations. *See F.D.I.C. v. Providence Coll.*, 115 F.3d 136, 140 (2d Cir.1997); Restatement (Third) of Agency § 2.03 ("Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal *and that belief is traceable to the principal's manifestations.*" (emphasis added)). A principal's silence can create the appearance of authority "when [the principal] knew or had reason to know that his silence would be relied on." *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F.Supp.2d 155, 163 (S.D.N.Y.2007) (internal quotation marks omitted).

Mondesir's distribution of the mixtapes is an action by Mondesir, not Jackson, and could not give Mondesir the appearance of authority to bind Jackson. *See Holmes v. Lorch*, 329 F.Supp.2d 516, 530 (S.D.N.Y. 2004) ("The agent cannot by virtue of his own actions imbue himself with apparent authority." (internal quotation marks omitted)). Defendants argue that Jackson's silence upon learning of the use of his images in 2007 gave Mondesir the appearance of authority. Assuming that Mondesir did grant Odenat permission to use the "G–Unit" mark and the images of Jackson, Defendant provides no evidence that Jackson knew or had reason to know of Mondesir's authorization. Thus, there was no reason for Jackson to believe that his silence would have been relied on by Odenat. *See Musket Corp.*, 512 F.Supp.2d at 163 (noting that defendant did not provide sufficient facts to suggest that the principal was aware that the alleged agent would be perceived as the principal's agent). Moreover, Odenat could not have relied on Jackson's silence in 2007 because Odenat does not allege that he was aware of Jackson's knowledge of the masthead before 2008. Nor would Jackson's silence in 2007 cloak Mondesir with the appearance of authority when Odenat began to use the first masthead in 2005, the second masthead in mid–2006, or the third masthead in January 2007.[6]

The defense would also fail on the second prong, reasonableness. Defendants characterize Mondesir as Jackson's sometime DJ, collaborator, and distributor of mixtapes. It is not clear how that relationship would give Mondesir carte blanche to license away Jackson's intellectual property. *See Meisel v. Grunberg*, 651 F.Supp.2d 98, 112 (S.D.N.Y.2009) (holding that actions outside the scope of the agent's authority cannot be imputed to the principal). Additionally, Defendants provide no evidence suggesting that the authorization was anything more than a conversation between two friends, Mondesir and Odenat. Those conversations could not be a reasonable basis for Odenat to conclude that it had obtained a license to use Jackson's intellectual property. *See Beastie Boys v. Monster Energy Co.*, 983 F.Supp.2d 338, 352–53 (S.D.N.Y.2013). Thus, implied license fails as a matter of

---

**6.** Defendants' defense of ratification—not asserted in the answer and raised for the first time in reply—would fail for the same reason. *See Rodonich v. House Wreckers Union Local 95*, 817 F.2d 967, 973 (2d Cir.1987) ("[R]atification can only occur when the principal, having knowledge of the material facts involved in a transaction, evidences an intention to ratify it." (internal quotation marks omitted)); Restatement (Third) of Agency § 4.06.

law, will not bar entry of a judgment in favor of Plaintiffs, and is stricken.

### 3. Equitable Estoppel

The defense of equitable estoppel fails for a similar reason. In order to succeed, Defendants acknowledge they must establish that (1) Jackson made a misleading communication, with "knowledge of the true facts," that caused Defendants to infer that Jackson would not enforce his rights against them; (2) they relied on the communication; and (3) they would be prejudiced. *See Zoll v. Ruder Finn, Inc.,* Nos. 03 Civ. 3652, 01 Civ. 1339, 2004 WL 405938, at *2 (S.D.N.Y. Mar. 3, 2004).

As already discussed, Mondesir had no apparent authority to bind Jackson. Therefore, none of the communications Mondesir allegedly had with Odenat about the website could be conceived as Jackson's "misleading communications." Even assuming Odenat's other allegations are true, Jackson himself had no communications with Odenat about the website until the alleged meeting in October 2008. By then the third masthead had already been on worldstarhiphop.com for almost ten months. Odenat could not have relied on this alleged meeting when he first used each of the mastheads. Thus, the defense is stricken because it fails as a matter of law. It will not prevent the Court from entering judgment in Plaintiffs' favor.

### 4. Unclean Hands

▇▇▇ The doctrine of unclean hands is an equitable defense requiring plaintiff to act "fairly and without fraud or deceit as to the controversy in issue." *Dunlop–McCullen v. Local 1–S,* 149 F.3d 85, 90 (2d Cir.1998) (internal quotation marks omitted). It "applies only with respect to the right at issue." *Warner Bros., Inc. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir.1983). In the trademark context, the fraud or deceit must relate to plaintiff's "acquisition or use" of the trademark. *See Gidatex,*

*S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 126, 131 (S.D.N.Y.1999). For copyright claims, plaintiff must have "either participated in the acts of infringement or ... committed some 'transgression' such as fraud upon the Copyright Office resulting in harm or prejudice to the defendant." *Coleman v. ESPN, Inc.,* 764 F.Supp. 290, 296 (S.D.N.Y.1991).

Defendant alleges that Jackson has unclean hands for three reasons. First, Jackson allegedly expressed his approval of Odenat's use of his persona in October 2008, but later demanded that his image be taken down and filed suit even after Odenat complied. Second, Jackson allegedly altered the focus of his website, thisis50.com, to the "same format and focus" as worldstarhiphop.com. (Def. Opp. Mem. 58.) Finally, Odenat alleges that Jackson hacked worldstarhiphop.com to shut it down during settlement negotiations.

Defendants assert this defense generally with no attempt to connect it to any of the rights at issue. None of the alleged conduct has anything to do with Plaintiffs' acquisition or use of the trademark, nor do they suggest that Plaintiffs engaged in copyright infringement or perpetrated a fraud on the Copyright Office. *See Gidatex,* 82 F.Supp.2d at 131; *Coleman,* 764 F.Supp. at 296. The defense therefore fails as a matter of law, is stricken, and will not prevent the Court from entering a judgment in favor of Plaintiffs.

The Court concludes that all of the affirmative defenses fail as a matter of law and are stricken. Therefore, none of the defenses entitle Defendants to judgment as a matter of law. Defendants' motion for summary judgment is denied as to all of the claims discussed above.

Additionally, the affirmative defenses will not bar entry of judgment in favor of Plaintiffs. Therefore, for the reasons dis-

cussed above, Plaintiffs' motion for summary judgment on the copyright infringement and right to publicity claims is granted. Plaintiffs' motion for summary judgment on the false endorsement, trademark infringement, and common law unfair competition claims is denied for the reasons given above.

### H. Plaintiffs' Fraudulent Transfer and Veil Piercing Claims

After Plaintiffs filed their complaint against Odenat, he created at least three business entities. One of the entities, Worldstar Hip Hop, Inc. registered the trademark "World Star Hip Hop" and transferred it to Worldstar, LLC, another of Odenat's newly created companies. Odenat also transferred worldstarhiphop.com to Worldstar, LLC. Defendants claim that Odenat created the entities and transferred the website for legitimate business purposes. Plaintiffs allege that these were not-for-value fraudulent transfers, within the meaning of New York Debtor and Creditor Law, and that the business entities should therefore be held liable as alter egos of Odenat.

 Under New York Debtor and Creditor Law,

> [A] person challenging a transfer of the debtor's property as constructively fraudulent ... must show that it was made without fair consideration and (1) the debtor was insolvent or was rendered insolvent by the transfer, (2) the debtor was left with unreasonably small capital, or (3) the debtor intended or believed that it would incur debts beyond its ability to pay when the debts matured.

*In re Vargas Realty Enters., Inc.,* 440 B.R. 224, 240 (S.D.N.Y.2010) (alterations in original) (citations and internal quotation marks omitted); *see* N.Y. Debt. & Cred. Law §§ 273, 274–275. Plaintiffs have presented no evidence to show that Odenat was insolvent or that he has unreasonably small capital because of the transfer. Although a jury could conclude intent or belief from Odenat's conduct, it is not now demonstrated as a matter of law.

 Plaintiffs raise an alternative theory pursuant to section 273–a of the New York Debtor and Creditor Law. Under that section, a plaintiff must show "(1) that the conveyance was made without fair consideration; (2) that the conveyor is a defendant in an action for money damages or that a judgment in such action has been docketed against him; and (3) that the defendant has failed to satisfy the judgment." *Grace v. Bank Leumi Trust Co. of N.Y.,* 443 F.3d 180, 188 (2d Cir.2006). As Odenat has not been given an opportunity to satisfy any judgment arising from this action, Plaintiffs cannot show that the third prong is satisfied. Plaintiffs are therefore not entitled to judgment on this claim as a matter of law.

Although Defendants claim that the transfer of the website was done for a legitimate business purpose, they have provided no evidence that the transfer of the website was made for consideration. Moreover, under section 273–a, Defendants' intent is irrelevant. *See Safety–Kleen Sys., Inc. v. Silogram Lubricants Corp.,* No. 12 Civ. 4849, 2013 WL 6795963, at *4 (E.D.N.Y. Dec. 23, 2013). Thus, Defendants have not demonstrated their entitlement to summary judgment on this issue.

Plaintiffs have presented sufficient evidence to survive Defendants' motion for summary judgment. However, Plaintiffs are not entitled to summary judgment on the supplemental complaint. Both parties' motions are denied on the fraudulent transfer issue. There is therefore no reason to address reverse veil piercing at this time.

## I. Third–Party Plaintiff's Claims for Contributory Copyright Infringement and Contributory Trademark Infringement

 Mondesir's motion is granted as to the contributory copyright and trademark infringement claims. It is well established that an infringer has no right to contribution under federal copyright or trademark law. *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 16 (2d Cir. 1988) (inappropriate to imply right of contribution under the Lanham Act); *Lehman Brothers, Inc. v. Wu*, 294 F.Supp.2d 504, 504–05 (S.D.N.Y.2003) (no right of contribution under copyright law); 4 McCarthy on Trademarks and Unfair Competition § 25:23; 6 Patry on Copyright § 18:31. Neither party appears aware of this limitation, and Odenat provides no caselaw to challenge this proposition nor does he provide an alternative state-law theory of liability. Tellingly, all of the cases cited by Odenat have a holder suing an infringer for contributory liability; none support an infringer recovering from a third party.

## J. Third–Party Plaintiff's Claim for Contribution for Violation of New York Civil Rights Law §§ 50, 51

 Unlike copyright and trademark law, there is a general right for a defendant to recover contribution from joint tortfeasors under New York law. *See* N.Y.C.P.L.R. §§ 1401–1404. Odenat asserts that Mondesir induced Odenat's use of Jackson's images on worldstarhiphop.com. Odenat therefore seeks contribution from Mondesir in the event that Odenat is found liable for violating Jackson's right of publicity. Mondesir mischaracterizes the claim as though it alleges that Mondesir posted the images. In misconstruing the claim, Mondesir has not pointed to a lack of evidence that would make summary judgment on this issue appropriate. Similarly, he has not demonstrated a failure to meet the pleading requirements.

Mondesir also argues that the statute of limitations bars the claim. However, the claim for contribution would not accrue until Odenat made a payment to Plaintiffs, which has not yet happened. *Bay Ridge Air Rights, Inc. v. State*, 44 N.Y.2d 49, 53, 404 N.Y.S.2d 73, 375 N.E.2d 29 (1978); *see also Korean Air Lines Co. v. Port Auth. of N.Y. & N.J.*, No. 10 Civ. 2484, 2012 WL 6967232, at *5 n. 4 (E.D.N.Y. Aug. 1, 2012). Mondesir's motion for summary judgment on this claim is therefore denied.

## K. Third–Party Plaintiff's Lanham Act Claim

On the Lanham Act claim, Mondesir raises several arguments. He argues that the "World Star Hip Hop" mark was not registered at the time the logo appeared on the mixtape and Odenat has not shown any evidence that the mark had acquired secondary meaning. He also claims that there is no evidence to suggest that he used the mark or that the use would likely cause confusion.

As explained earlier, a section 43 claim does not require a registered trademark. *See also Famous Horse*, 624 F.3d 106 at 109. To the extent Mondesir is challenging the placement of the World Star Hip Hop URL on the mixtape as a "use" of the mark "as a mark," such a use is not required for a false endorsement claim. *See Kelly–Brown*, 717 F.3d at 308. Mondesir's "use" argument also fails if he means that the mark was not "used in commerce," because all parties agree that the worldstarhip.com URL was "affixed" to the mixtape. *See* 15 U.S.C. § 1127.

Mondesir makes a conclusory assertion that consumers are unlikely to be confused, but does not meaningfully address any of the *Polaroid* factors except for the

strength of the mark by way of challenging the secondary meaning of "World Star Hip Hop." The Court, having reviewed the placement of the URL on the mixtape, finds that a jury could conclude that consumers would likely be confused as to World Star Hip Hop's sponsorship or affiliation of the mixtape. Thus, Mondesir has not demonstrated that Odenat's claim fails as a matter of law.

The statute of limitations does not save Mondesir's motion on this claim. As section 43 does not have a statute of limitations, courts look to the most analogous state statute of limitations. *See Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 191 (2d Cir.1996). The six-year statute of limitations provided for by Rule 213(8) of the New York Civil Practice Law and Rules is the appropriate New York analog for a Lanham Act claim. *Id.* at 192. Mondesir's alleged use of the worldstarhiphop.com URL occurred in 2005. Odenat filed the third-party complaint against Mondesir in 2010. Thus, Odenat's claim is not barred by the statute of limitations. Mondesir's motion for summary judgment on this issue is therefore denied.

### L. Third–Party Defendant's Motion to Dismiss the Third–Party Complaint for Failing to Satisfy Minimal Pleading Requirements

In addition to summary judgment, Mondesir also seeks dismissal of the third-party complaint for failure to satisfy minimal pleading requirements. Based on the Court's conclusions above, the Court need not address the sufficiency of Odenat's three claims for contribution.

Setting aside whether it was appropriate to file such a motion at the close of discovery, the Court denies Mondesir's motion as to the Lanham Act claim. Although Mondesir notes that the claim lacks an allegation that the consumers would be "deceived," the third-party complaint alleges that consumers are likely to be confused as to sponsorship. As discussed above, alleging a likelihood of confusion as to sponsorship is sufficient. *See also Famous Horse,* 624 F.3d at 109.

### M. Third–Party Defendant's Motion for Attorney's Fees

Having not disposed of all of the claims in the third-party complaint, it is not yet clear whether Mondesir is a "prevailing party" under either the copyright or trademark acts. It is thus premature for the Court to consider his request for attorney's fees.

### III. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied. Plaintiffs' motion for summary judgment is granted as to their copyright infringement and right to publicity claims; their motion for summary judgment is denied as to the false endorsement, trademark infringement, and common law unfair competition claims, as well as to the fraudulent transfer and veil-piercing claims in the supplemental complaint. Mondesir's motion for summary judgment is granted as to the contributory copyright infringement and contributory trade infringement claims. His motions for summary judgment and dismissal are denied as to Odenat's Lanham Act claim and the claim for contributory violation of New York Civil Rights Law §§ 50, 51. The Court also denies Mondesir's motion for attorney's fees as premature.

The Clerk of Court is directed to close the open motions at Docket Nos. 110, 120, and 139. The Court will hold a status conference in this case on Wednesday, April 16, 2014, at 12:00 p.m. in Courtroom 20–C of the Daniel Patrick Moynihan United States Courthouse.

**SO ORDERED.**

## OPINION & ORDER

On March 24, 2014, the Court denied Defendants' motion for summary judgment, granted in part and denied in part Plaintiffs' motion for summary judgment, and granted in part and denied in part Third–Party Defendant's motion for summary judgment. Defendants Lee Odenat; Worldstar Hip Hop, Inc.; Worldstar, LLC; and WSHH337, LLC now move for partial reconsideration of that Opinion & Order pursuant to Local Civil Rule 6.3. For the reasons that follow, their motion is denied.

## I. Background

The Court assumes familiarity with the facts as set forth in the March 24, 2014 Opinion & Order. *See* 9 F.Supp.3d at 348–50. As relevant here, the Court found Defendants liable for copyright infringement for posting on their website copies of certain copyrighted photographs registered as part of the pictorial material accompanying two of Plaintiffs' albums. In comparing the copyrighted photographs with the images on Defendants' website, the Court noted that "the only discernible difference" aside from cropping was that one of the pictures had been "flipped" so that it faced right instead of left. *Id.* at 352–53. The Court also denied Defendants' request for leave to amend their answer to interpose a statute of limitations defense as to Plaintiffs' right of publicity claim, because Defendants had failed to demonstrate diligence. *See id.* at 353–55.

## II. Discussion

### A. Legal Standard

A motion for reconsideration should generally be denied "unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). This standard is strict to "ensure the finality of decisions and to prevent the practice of a losing party examining a decision and then plugging the gaps of a lost motion with additional matters." *Grand Crossing, L.P. v. U.S. Underwriters Ins. Co.,* No. 03 Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (internal quotation marks omitted). A motion for reconsideration is not a substitute for appeal nor an opportunity to advance new theories not previously argued. *See Walsh v. WOR Radio,* 537 F.Supp.2d 553, 555 (S.D.N.Y. 2008), *aff'd,* 326 Fed.Appx. 589 (2d Cir. 2009).

### B. Analysis

Defendants argue that the Court made clear errors of law in finding them liable for copyright infringement and in denying their request to amend their answer to interpose a statute of limitations defense. Neither argument warrants reconsideration of the Court's March 24, 2014 Opinion & Order.

As to copyright liability, Defendants contend that the Court made two clear errors regarding the issue of substantial similarity. First, according to Defendants, the Court erred by noting that "Plaintiffs only need to show a substantial similarity when there is no evidence of actual direct copying." 9 F.Supp.3d at 352. Second, Defendants claim that the Court went on to apply the wrong standard for substantial similarity. Defendants maintain that the Court reached erroneous conclusions because it overlooked binding Second Circuit authority, principally *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.,* 338 F.3d 127 (2d Cir.2003).

The Court did not overlook controlling authority, however, and it applied the correct standard. Even if a substantial similarity analysis is still required when actual

direct copying is already established, that would not affect Defendants' liability because the Court went on to engage in this analysis. As Defendants acknowledge, the Court compared the images on the website to the copyrighted photographs and determined that "the images on the masthead are substantially similar because they are exact copies." 9 F.Supp.3d at 352. In reaching this conclusion, the Court found that the copyrighted photographs "exceed the rather low bar for copyright protection of photographs" and that the copying was more than de minimis because it included "the subjects of the copyrightable photographs." *Id.; see also Tufenkian,* 338 F.3d at 131 (defining substantial similarity as when "the copying amounts to an improper or unlawful appropriation, i.e., (i) that it was protected expression in the earlier work that was copied and (ii) that the amount that was copied is more than de minimis" (internal quotation marks omitted)); *Elsmere Music, Inc. v. Nat'l Broad. Co.,* 482 F.Supp. 741, 744 (S.D.N.Y.) (finding more than a de minimis taking where defendant used a "significant (albeit less than extensive)" portion representing the "heart" of the work), *aff'd,* 623 F.2d 252 (2d Cir.1980). Having considered the controlling authority cited by Defendants and finding that it would not lead to a different result, the Court concludes that reconsideration of the copyright issue would be improper.

■ To support their substantial similarity argument, Defendants take the Court's finding that one of the images was "flipped" as an invitation to now argue that the image may have been from a different album that was not registered with the copyright office. The Court notes that Defendants' new argument is belied by their concession that the image was actually copied from the photograph registered with one of Plaintiffs' copyrighted albums.

(Def. Summ. J. Opp. Mem. 9; Def. Summ. J. Reply Mem. 3.) Although Defendants claim that they should be able to advance this theory because Plaintiffs did not note the difference when they moved for summary judgment, the image's change in orientation is a factor that could only inure to Defendants' benefit. That the Court considered the change sua sponte does not mean that Defendants are entitled to address it more fully. Since Defendants did not raise this argument when moving for summary judgment, the Court does not consider it now. *See Nieves v. N.Y.C. Police Dep't,* 716 F.Supp.2d 299, 303 (S.D.N.Y.2010) ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced . . . ." (internal quotation marks omitted)).

■ Defendants also contend that the Court erred in denying their request (made in a footnote in their summary judgment reply brief) to amend the complaint by basing its ruling solely on Defendants' diligence instead of also considering whether Plaintiffs would be prejudiced by such an amendment. To support this argument, Defendants cite the Second Circuit standard for amendment of pleadings under Rule 15(a) of the Federal Rules of Civil Procedure. However, the lenient Rule 15(a) standard must be balanced against the Rule 16(b) "good cause" standard when a scheduling order sets a deadline for amending pleadings. *See Grochowski v. Phx. Constr.,* 318 F.3d 80, 86 (2d Cir.2003). Indeed, this Court explicitly relied on Rule 16(b)(4): "Because we are well past the December 15, 2009 deadline to amend pleadings, Defendants must show good cause." 9 F.Supp.3d at 354 (citing Fed.R.Civ.P. 16(b)(4)); *see also Jackson v. Odenat,* No. 09 Civ. 5583, 2012 WL 505551, at *2–3 (S.D.N.Y. Feb. 14, 2012) (applying the Rule 16(b) "good

cause" standard). The Court concluded that Defendants' did not demonstrate diligence because their mistake in failing to plead a statute of limitations defense as to the right of publicity claim did not justify their more than three-year delay in requesting leave to amend. *See* 9 F.Supp.3d at 354–55. Reconsideration would be inappropriate because Defendants have not pointed to controlling authority that would change this conclusion.

### III. Conclusion

For the foregoing reasons, Defendants' motion for reconsideration is denied. The parties are directed to schedule a settlement conference with Magistrate Judge Gorenstein.

**SO ORDERED.**